Argued December 7, 1966, affirmed March 22, 1967

# STATE OF OREGON, *Respondent, v.*
# MERLE LEE TRACY, *Appellant.*
### 425 P. 2d 171

*Hal F. Coe,* Klamath Falls, argued the cause for appellant. On the brief were Coe & Brandness, Klamath Falls.

*Sam A. MeKeen,* District Attorney, Klamath Falls, argued the cause and filed a brief for respondent.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and REDDING, Justices.

REDDING, J. (Pro Tempore).

The defendant, Merle Lee Tracy, was convicted by a jury in Klamath county on both counts of a two-count indictment. He was sentenced to 10 years in the penitentiary on count one, in which he was charged with forcible rape, and was sentenced to a six-year consecutive term in the penitentiary on count two, in which he was charged with assault with a dangerous weapon. Defendant appeals.

On the 24th of July, 1965, the defendant in company with his pregnant wife, attended a "keg party" at a gravel pit near Lake O The Woods some distance from Klamath Falls. The party started at about 8:00 or 8:30 p.m. The complaining witness, Kitty Kirkes, was also at the party and was known casually by the defendant. At approximately 11:30 p.m., the defendant, his wife, one Harvey Kammerer and one Diane Malzahn left the party and returned to Klamath Falls. Upon reaching Klamath Falls, the defendant left his wife off at the home of his parents. The defendant, accompanied by Harvey Kammerer and Diane Malzahn, then drove to a tavern to pick up some more beer. From there, they proceeded to the home of Diane Malzahn, 320 North 5th Street, Klamath Falls. Diane Malzahn disembarked at her residence and the defendant, accompanied by Harvey Kammerer, went for a drive that they might talk. Approximately thirty minutes later, they stopped at the home of defendant's friend David Bernard to "continue their drinking." This home was located about one mile from the house where Diane Malzahn lived. While in the home of David Bernard, the defendant provoked a fight with his friend and host. Testimony concerning defendant's participation in said

fight was received in evidence over the objection of the defendant.

Thereafter, and at approximately 2:00 a.m., the defendant drove Harvey Kammerer to Diane Malzahn's house. When they arrived, Diane Malzahn, Kitty Kirkes and Steve Arnett were at the house, Kitty Kirkes being with Steve Arnett, who had accompanied her to the party earlier in the evening.

Approximately one-half hour after arriving at the house, the defendant and Kitty Kirkes left in the defendant's car, taking some beer with them. They drove to an area near Spirit Lake Road. The proxecutrix testified that the defendant turned down a dirt road near a canal and that because of excessive speed the car was driven into a marsh where it became stuck. According to the testimony of the prosecutrix, shortly after alighting from the immovable car the defendant held a hunting knife to her throat thus forcing her to disrobe and submit to sexual intercourse on the ditch bank near the car. The defendant then attempted to get his car out of the marsh, was unable to do so, after which he and the prosecutrix walked to a nearby farm where the defendant took a truck which he used in an attempt to pull his car from the marsh. Failing in this attempt, the defendant again had sexual intercourse with the prosecutrix in the seat of the truck. Using the truck, the defendant then drove the prosecutrix to the M & M Diesel restaurant and garage that he might obtain a wrecker. This was about 6:00 or 6:30 in the morning. Pursuant to her request by phone, Kitty Kirkes was then picked up and taken to Klamath Falls by her friends, Harvey Kammerer and Diane Malzahn. The defendant returned the truck to the farm from which he had taken it and then returned to the area in which his car was stuck. Shortly after

arriving at his car, defendant was picked up by a state police officer on a charge of forcible rape. Defendant was taken to the city jail in Klamath Falls where he was placed under arrest and advised fully of his legal rights. The following afternoon, after he was arraigned before a district judge, he was transferred to the county jail, where trial exhibits 21 and 23, the defendant's suntan pants and shorts, were taken from him without his being advised further of his legal rights. Expert testimony was received that a stain on the front of the pants was blood. These exhibits were introduced for the purpose of corroborating the state's evidence that the defendant had had sexual intercourse with the prosecutrix.

Defendant admitted that he had had sexual intercourse with Kitty Kirkes on the two occasions to which she testified. Defendant contends, however, that the prosecutrix freely consented to said acts without force or coercion on his part.

On the morning of the trial, and prior to the beginning thereof, counsel for defendant, in the trial judge's chambers, announced:

"One other thing, for the record, the defendant would demur to the indictment on the grounds and for the reasons that it states two causes of action and does not state one cause of crime, it is a two count indictment."

It will be noted that the demurrer of the defendant did not attack the sufficiency of the allegations in either count of the indictment, but rather challenged the right of the state to join the two counts in the indictment.

The defendant, in his appeal, asserts four assignments of error. In his first and principal assignment of error, he contends the court erred in sustaining the

indictment thus allowing the joinder of the two counts, which the defendant challenged by demurrer.

The indictment charged the defendant as follows:

## "COUNT I

"The said Merle Lee Tracy on or about the 25 day of July, A. D. 1965 in the said County of Klamath and State of Oregon, then and there being, did then and there unlawfully, feloniously and forcibly ravish and carnally know one Kitty Kirkes, a female, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

## "COUNT II

"The said Merle Lee Tracy, as part of the same act and transaction alleged in Count I, on or about the 25th day of July, 1965, in the said County of Klamath and state of Oregon, then and there being, and then and there being armed with a dangerous weapon, to-wit: a knife, did then and there unlawfully, wilfully and feloniously assault one Kitty Kirkes by cutting the said Kitty Kirkes with said knife, contrary to the statutes in such case made and provided and against the peace and dignity of the State of Oregon."

██ The indictment in the instant case, which is in the language of the statute, charged the defendant in count one with forcible rape, which it is alleged occurred as a part of the same act and transaction as count two, in which the defendant is charged with assault with a dangerous weapon. ORS 132.560 specifically authorizes the procedure of joining several charges or counts where all result from the same act or transaction. We have repeatedly held that an indictment in the language of a statute is good on demurrer. *State v. Huennekens,* 245 Or 150, 420 P2d 384 (1966). Since it does not appear on the face of the

indictment in the within case that the two crimes could not have been a part of the same act or transaction, the demurrer was properly overruled. *State v. Huennekens,* supra.

■■ The defendant, in his second assignment of error, contends that the court erred in failing to grant defendant a new trial on the grounds that one of the jurors on the case discussed the case with his wife during the trial. In support of his motion for a new trial, the defendant called Catherine Tracy, mother of the defendant, as a witness. The witness testified that while waiting adjacent to the court room for the jury to return with its verdict, she had a conversation with the wife of a member of the jury. The witness testified that the juror's wife advised her that she knew that her husband was going to vote not guilty because of the "type of girl that he [the juror] thought Kitty Kirkes was * * * her husband had told her he did not think that Merle Tracy had to rape the girl * * * 'She was not a nice girl, I [the juror] would not put any faith in her testimony' * * *." Russell M. Tracy, the father of the defendant, was also called by the defendant and he testified he overheard part of the foregoing conversation between his wife and the wife of the juror. The above testimony, offered on behalf of defendant in support of his motion for a new trial, was properly rejected by the court as being hearsay evidence. This is so obvious the citation of authority is unnecessary. Further, the opinion allegedly expressed by the juror was favorable to the defendant. ORS 17.610 sets out the causes for which a court may grant a new trial. One such ground is "[m]isconduct of the jury * * *" materially affecting the substantial rights of the party aggrieved. Even had the court considered the above incompetent testi-

mony in ruling on defendant's motion for a new trial, it would have been fully warranted in finding that the unauthorized communication, if in fact made, was not prejudicial and did not materially affect the rights of the defendant.

■ In *Burnett v. Weinstein,* 154 Or 308, 59 P2d 258 (1936) this court held:

"* * * It is well settled in this jurisdiction that the granting of a new trial on account of the misconduct of a juror is within the discretion of the trial court and that its determination will not be reversed except for an abuse of such discretion: *Egli v. Hutton,* 135 Or. 175 (294 P. 347); *Mount v. Welch,* 118 Or 568 (247 P. 815) * * *." 154 Or at 315.

We hold that the court did not err in denying defendant's motion for a new trial on the basis of the alleged misconduct of the juror.

■ In his third assignment of error, the defendant urges that the court erred in admitting evidence that the defendant had been involved in an altercation earlier on the night of the alleged offense. Upon the trial the defendant contended that the prosecutrix, Kitty Kirkes, had, voluntarily of her own volition and free choice, accompanied defendant in his automobile. The testimony of the prosecutrix was that she accompanied the defendant because she was afraid of harm from the defendant to herself and to Steve Arnett, her escort. As between the defendant's contention and the testimony of the prosecutrix, there was clearly a conflict relating to an important and essential element of the crime charged, that is to say the consent or lack of consent of the rape victim. Testimony of defendant's prior altercation was elicited for the first time upon the trial through cross-examination of the

prosecutrix by defense counsel in an effort to show that the prosecutrix freely accompanied the defendant without threats or other coercion on the part of the defendant.

The prosecutrix, on cross-examination, testified as follows:

"Q So you weren't afraid of him then?

"A Yes.

"* * * * *

"Q (BY MR. COE) All right, what were you afraid of?

"A I was afraid because Harvey had told me that he [the defendant] had got in a scuffle with two other guys sooner and not to cross him.

"* * * * *

"Q What did you go for, if you didn't want to?

"A Because he [the defendant] said he would beat up Steve if I didn't."

Explaining further the prosecutrix' reason for accompanying the defendant in his automobile at 3:00 a.m. on the morning of the alleged crime, Harvey Kammerer testified as follows:

"Q Just a minute, now, where were you when he [the defendant] was talking to you?

"A Sitting next to him.

"Q And what kind of voice was he talking to you in?

"A He was whispering to me.

"* * * * *

"Q What was said?

"A He [the defendant] asked me to tell Diane to tell Kitty to have Steve [the prosecutrix' escort] go home, and I asked why, and Merle [the defendant] said, 'Because I want to take out Kitty, I want

to be with Kitty,' and I said, 'Well, wait awhile, maybe tomorrow night, even the next night,' I says, 'There is no rush,' I says, 'You can take her out some other night, you don't have to take her out tonight. She is with Steve now.' Then he says, 'Do you think I can whip him?' I says, 'Who,' and he says, 'Steve.' I says, 'I don't know, probably, but why whip him when you can take her out some other night,' I says, 'Why tonight?' Pretty soon he says, 'You'd better tell Diane to tell Kitty to have Steve leave or he is going to be leaving here in a stretcher.' I says, 'Well, Merle, there is no sense in causing trouble, you get in trouble with Steve and you are going to have his cousins and a bunch of his friends looking for you, it is just going to cause trouble.' He says, 'Tell him to come on, if I can't handle him, I have a knife that can.' "

The substance of the above conversation which Kammerer had with the defendant was relayed to Kitty, the prosecutrix, by Diane, both of whom, together with Steve Arnett, were present at the time of the alleged conversation. Immediately following the foregoing conversation, the prosecutrix, at the express request of the defendant, left the house and went to defendant's car which was parked in the front of the house, where she was joined by the defendant some three minutes later.

■■ The issue of voluntariness of the prosecutrix in accompanying the defendant and later submitting to defendant's sexual demands was clearly for the jury. In *State v. Sullivan,* 139 Or 640, 652, 11 P2d 1054 (1932), this court quoted with approval the following language from a well reasoned Kansas case:

" 'It is clear that the commission of one offense cannot be proved on the trial of a party for another, merely for the purpose of inducing the jury to believe that he is guilty of the latter, because he

committed the former. You cannot prejudice a defendant before a jury by proof of general bad character, or particular acts of crime other than the one for which he is being tried. And on the other hand, it is equally clear that whatever testimony tends directly to show the defendant guilty of the crime charged, is competent, although it also tends to show him guilty of another and distinct offense \* \* \* .' "

█ In *State v. Long,* 195 Or 81, 112, 244 P2d 1033 (1952), this court held:

"\* \* \* It is fundamental that the state is entitled to the benefit of any evidence which is relevant to the issue, even though it concerns the commission of collateral crimes. If evidence of a collateral crime tends to prove the commission of the crime charged in the indictment, the general rule of exclusion has no application \* \* \* ."

We hold that the court did not err in admitting testimony concerning the defendant's prior altercation.

█ The defendant in his fourth assignment of error, contends that the court erred in admitting state's exhibits 21 and 23, being the suntan pants and shorts worn by the defendant at the time of his arrest. The defendant objected on the ground that it violated defendant's constitutional rights against self-incrimination where the court failed to first ascertain that the defendant had been advised of his constitutional rights in connection with self-incrimination before said items of clothing were taken. It should be noted that the question here sought to be raised is one of search and seizure and not one of self-incrimination. While not properly raised, we have reviewed the matter and hold that the seizure was lawful under the circum-

stances. In *State v. Cram,* 176 Or 577, 582, 583, 160 P2d 283, 164 ALR 952 (1945), this court held:

> "If the arrest of a prisoner is lawful, the officer making the arrest may search the person of the prisoner and take from him not only the instruments of the crime but also such articles as may be of use as evidence on the trial. The search is justifiable as incident to the lawful arrest. *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341, L.R.A. 1915 B 834. Ann Cas. 1915C 1177; *State v. Laundy,* supra (103 Or. at 496). The accused, upon his arrest, may be required to do many things without having his constitutional rights against self-crimination invaded. For the purpose of identification he may be required to stand up in court; to appear at the scene of the crime (3 Wharton, Crim. Ev., 11th Ed., § 1141); to put on a blouse to see if it fits him (*Holt v. United States,* 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, 20 Ann. Cas. 1138); to place a handkerchief over his face (*Ross v. State,* 204 Ind. 281, 182 N.E. 865); to stand up and remove his glasses (*Rutherford v. State,* 135 Tex. Crim. Rep. 530, 121 S.W. (2d) 342); to remove his coat and shirt and permit the jury to see scars on his body and to don a shirt introduced in evidence (*State v. Oschoa,* 49 Nev. 194, 242 P. 582); or to exhibit his arm so as to reveal tattoo marks thereon, which a previous witness has sworn were there (*State v. Ah Chuey,* 14 Nev. 79, 33 Am. Rep. 530). He may also be fingerprinted, photographed and measured under the Bertillon system. *United States v. Kelly,* 55 Fed. (2d) 67, 83 A.L.R. 122, and cases therein cited; *Downs v. Swann,* 111 Md. 53, 73 A. 653, 23 L.R.A. (N.S.) 739, 134 Am. St. Rep. 586; *Bartletta v. McFeeley,* 107 N.J. Eq. 141, 152 A. 17; *People v. Les,* 267 Mich. 648, 255 N.W. 407, and authorities therein cited; *Connors v. State,* 134 Tex. Crim. Rep. 278, 115 S.W. (2d) 681. For other instances, see 8 Wigmore, § 2265, footnote 2."

The objection to the admission in evidence of the defendant's pants and shorts taken from him by the police after his lawful arrest and arraignment without warning as to his constitutional rights with reference to self-incrimination is without merit.

Affirmed.