Argued July 26, affirmed September 28, petition for
rehearing denied October 17, petition for review
denied November 28, 1972

# STATE OF OREGON, *Respondent, v.*
# LEROY GRAUF (No. 36959),
## *Appellant.*

501 P2d 345

*Verden L. Hockett, Jr.,* Roseburg, argued the cause and filed the briefs for appellant.

*Stephen H. Miller,* Deputy District Attorney, Roseburg, argued the cause for respondent. On the brief was Doyle L. Schiffman, District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

The defendant appeals from a conviction after jury trial of disseminating obscene matter in violation

of former ORS 167.151.[1] The defendant operates a drive-in theatre in Sutherlin at which an allegedly obscene motion picture entitled "Southern Comforts" was exhibited on three consecutive evenings.

Three issues are presented by defendant's assignments of error:

(1) Is former ORS 167.151 constitutional?

(2) Does the indictment allege facts sufficient to state a crime?

---

[1] Former ORS 167.151:

"(1) No person shall knowingly disseminate obscene matter. A person disseminates obscene matter if he exhibits, sells, delivers or provides, or offers or agrees to exhibit, sell, deliver or provide, or has in his possession with intent to exhibit, sell, deliver or provide any obscene writing, picture, motion picture, device, record, material or other representation or embodiment of the obscene.

"(2) As used in subsection (1) of this section, matter is obscene if, considered as a whole, its predominant theme appeals to prurient interest and if it is patently offensive and goes substantially beyond the customary limits of candor in describing or representing such matter with reference to ordinary persons.

"(3) In any prosecution for an offense under this section, evidence shall be admissible, as relevant to a determination of whether or not the predominant theme of the matter appeals to prurient interest, to show artistic, literary, scientific or educational merit of the matter.

"(4) In any prosecution for a violation of this section, it shall be relevant on the issue of knowledge to prove the advertising, publicity, promotion, method of handling or labeling of the matter, including any statement on the cover or back of any book or magazine.

"(5) Violation of subsection (1) of this section is punishable by imprisonment in the county jail for not more than six months, or a fine of not more than $1,000 or both." (Repealed Oregon Laws 1971, ch 743, § 432.)

Under the new criminal code, exhibiting an obscene performance to a person under 18 years of age, who is not accompanied by his parent or guardian, is a crime. See Oregon Laws 1971, ch 743, § 258, pp 1939-40.

(3) Is the motion picture "Southern Comforts" obscene?

On May 25, 1971, two officers of the Douglas County Sheriff's Department attended a regular showing of the films "Where's Papa" and "Southern Comforts" at defendant's drive-in theatre. Subsequently, on June 7, 1971, a hearing was held in the circuit court to determine whether sufficient cause existed to warrant the seizure of the two films. After hearing evidence and viewing the films, the court ruled that the film "Where's Papa" was not obscene. It was not seized. The court did, however, find that under the prescribed tests, the film "Southern Comforts" was of a nature that it could be found to be obscene. The defendant was subsequently indicted for disseminating obscene matter by showing "Southern Comforts."

Defendant's drive-in theatre is located adjacent to the junction of two highways in such a manner that films being projected on the screen can be seen by passing motorists.

The state offered testimony of two motorists who had seen portions of "Southern Comforts" while driving past defendant's theatre. Both expressed disgust at the acts of alleged sexual deviation being performed on the screen.

There are also several private residences located in the area whose occupants can view movies being projected at the theatre. The state offered testimony of one resident who testified that she did view portions of "Southern Comforts," found it offensive and had encountered difficulty in keeping her minor children from looking out the window at the allegedly deviant conduct being shown. There was evidence produced at

the trial that during the showing of the subject film persons under the age of 18 were denied admission. However, further evidence revealed that minors ranging in age from 8 to 18 were observed viewing the showing from certain unobstructed vantage points outside the theatre enclosure. The defense offered testimony of two nearby residents. One had viewed portions of the movie from his property and was not offended by it. The other resident said that he did not see any portion of the challenged motion picture.

The movie "Where's Papa" was advertised as carrying an "R" (Restricted) rating, but there was no rating advertised as to "Southern Comforts." The distributor testified that "Southern Comforts" was rated by the studio as a "shaky 'GP'" (General Patronage). The testimony offered by defendant's witnesses was that the theatre displayed, on its marquee and at the box office, a sign to the effect that the movies were for adults only, no minors (under 18) allowed.

■ We first consider defendant's contention that former ORS 167.151 is unconstitutional. That issue has been decided against defendant's position by our Supreme Court in *State v. Childs*, 252 Or 91, 447 P2d 304 (1968), *cert denied* 394 US 931 (1969).

Defendant insists, however, that *Childs* has in effect been overruled by *Hayse v. Van Hoomissen*, 321 F Supp 642 (D Or 1970), *vacated on other grounds* 403 US 927 (1971), wherein the United States District Court for Oregon held that ORS 167.151 is unconstitutionally overbroad. *Hayse* was a suit for a permanent injunction against enforcement of ORS 167.151. The United States Supreme Court vacated the judgment (403 US 927) and remanded for reconsideration in light of *Younger v. Harris*, 401 US 37, 91 S Ct 746,

27 L Ed 2d 669 (1971), and *Samuels v. Mackell,* 401 US 66, 91 S Ct 764, 27 L Ed 2d 688 (1971). *Younger* and *Samuels* involved federal court injunctions against state criminal proceedings. The Supreme Court, in setting aside these injunctions, declared that federal courts should not enjoin pending state criminal prosecutions except under extraordinary circumstances where the danger of irreparable injury is great and immediate.

On the authority of *State v. Childs,* supra, we hold that former ORS 167.151 is constitutional.[2]

■ Defendant's second assignment of error is that the indictment did not state facts sufficient to constitute a crime. Omitting caption and other headings, the indictment charged that the defendant

"* * * did knowingly disseminate obscene matter by then and there exhibiting, offering and agreeing to exhibit to the public an obscene motion picture, to-wit: 'Southern Comforts'."

Former ORS 167.151(1) provides:

"No person shall knowingly disseminate obscene matter. A person disseminates obscene matter if he exhibits, sells, delivers or provides, or offers or agrees to exhibit, sell, deliver or provide, or has in his possession with intent to exhibit, sell, deliver or provide any obscene writing, picture, motion picture, device, record, material or other representation or embodiment of the obscene."

The indictment essentially charges defendant in the language of the statute and is therefore sufficient.

---

[2] The conviction in State v. Childs, 252 Or 91, 447 P2d 304 (1968), *cert denied* 394 US 931 (1969), has subsequently been reversed through federal habeas corpus proceedings. Childs v. State of Oregon, 300 F Supp 649, 650 (D Or 1969) (holding matter not obscene), *reversed* 431 F2d 272 (9th Cir 1970) (holding matter to be obscene), *reversed* 401 US 1006 (1971).

*State v. Nussbaum,* 261 Or 87, 491 P2d 1013 (1971);
*State v. Tracy,* 246 Or 349, 425 P2d 171 (1967); *State
v. Zimmerlee,* 5 Or App 253, 483 P2d 111 (1971), *reversed on other grounds,* 261 Or 49, 492 P2d 795 (1972).

We take up defendant's third assignment, viz.,
that the subject motion picture is not obscene when
judged by the tests applied in several recent decisions
of the United States Supreme Court.

The Supreme Court has defined obscenity in *Roth
v. United States,* 354 US 476, 489, 77 S Ct 1304, 1 L Ed
2d 1498, 1509 (1957), in the following terms:

> "* * * [W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest * * *."

■ Under this definition three elements must coalesce: (1) The dominant theme of the material taken
as a whole must appeal to the prurient interest in sex;
(2) the material must be patently offensive because
it affronts contemporary community standards relating to the description or representation of sexual
matters; and (3) the material must be utterly without
redeeming social value. *Redrup v. New York,* 386 US
767, 770, 87 S Ct 1414, 18 L Ed 2d 515, 518, *rehearing
denied* 388 US 924 (1967); *Memoirs v. Massachusetts,*
383 US 413, 418, 86 S Ct 975, 16 L Ed 2d 1, 5, 6 (1966);
*State v. Childs,* supra at 95-96; *State v. Oregon Bookmark Corp.,* 7 Or App 554, 555, 492 P2d 504 (1972).
Further, each of these three criteria must be applied
independently. *Memoirs,* at 419.

Commenting on the element of pruriency as that
which tends to corrupt by inciting lascivious or lustful
thoughts, the Ninth Circuit Court of Appeals said:

> "* * * It may be to oversimplify, but it looks

\* \* \* as if 'prurient' is to be the talisman. And out of 'prurient' it would seem that obscenity is shifting from the standard of distasteful to a majority of people to a standard of disgusting, really lewd, shameful, or excites morbid interest in sex. Perhaps, the shift is from 'bad' to 'awful.'

"\* \* \* \* \* \*

"In short, there seems to emerge from the cases the proposition that obscenity in the standard of pruriency must really 'smell,' not just be of slight 'odor.' \* \* \*." *Eastman Kodak Company v. Hendricks*, 262 F2d 392, 397 (9th Cir 1958).

■ The Oregon Supreme Court has held that the courts of this state are bound to follow the definition of obscenity used by the United States Supreme Court. *State v. Childs*, supra. The question of whether a particular matter is obscene is an issue of constitutional law to be determined by an independent, *de novo*, judgment on the facts of the case. *Jacobellis v. Ohio*, 378 US 184, 188, 84 S Ct 1676, 12 L Ed 2d 793 (1964); *Childs v. State of Oregon*, 431 F2d 272 (9th Cir 1970), *reversed* 401 US 1006 (1971).

■ After viewing "Southern Comforts" in its entirety this court concludes that the subject film is legally obscene by the standards laid down in ORS 167.151 and *Roth*.

The plot, ostensibly the search for contestants and the staging of an impromptu beauty contest in a rural area, appears to this court to be nothing more than a vehicle employed by the producers of the film to permit the wholesale display on the screen of an endless succession of sexual acts, with substantial film footage being devoted to acts of sexual perversion. Included among the acts represented, with full sound effects, are the following: Mouth-genital sexual perversion between females, and between male and

female; bestiality (sexual relations between man and animal); group fornication; group lesbianism; smoking marihuana to induce or heighten enjoyment of group lesbian acts.

We find: (1) Considered as a whole, the dominant theme of "Southern Comforts" is to appeal to the prurient interest in sex; (2) the film is patently offensive and totally lacking in any redeeming social value; and (3) as shown by the evidence, the above described exhibitions were and are contrary to the prevailing moral standards of the community, and went substantially beyond the customary limits of candor in describing or representing such matter with reference to ordinary persons.

■ One further contention by defendant should be considered. Defendant in his reply brief and during oral argument before this court for the first time attacks the sufficiency of the indictment on a new ground: That the indictment failed to give defendant fair notice that the location of the exhibition and the presence of minors and nonconsenting adults in the viewing audience were vital elements of the offense. Defendant has invited our attention to the very recent decision of the United States Supreme Court in *Rabe v. Washington,* 405 US 313, 92 S Ct 993, 31 L Ed 2d 258 (1972), and strenuously urges that this decision requires that we declare former ORS 167.151 unconstitutional as applied to him. *Rabe* involved a Washington obscenity statute substantially similar to ORS 167.151. Defendant Rabe was convicted of showing an allegedly obscene film, "Carmen Baby," in violation of RCW 9.68.010.[9] In affirming the convic-

---

[9] RCW 9.68.010 then provided:
"Every person who —
"(1) Having knowledge of the contents thereof shall ex-

tion, the Supreme Court of Washington said that "if we were to apply the strict rules of *Roth* [354 US 476], the film 'Carmen Baby' probably would pass the definitional obscenity test if viewing audience consisted only of consenting adults." *State v. Rabe,* 79 Wash 2d 254, 263, 484 P2d 917, 922 (1971). However, the court said that in the context of its exhibition (*i.e.,* minors were viewing movie; screen visible to occupants of neighboring residences and passing motorists) the movie was obscene. The United States Supreme Court reversed the Washington Supreme Court, holding that

"\* \* \* a State may not criminally punish the exhibition at a drive-in theatre of a motion picture where the statute, used to support the conviction, has not given fair notice that the location of the exhibition was a vital element of the offense." *Rabe v. Washington,* supra, 405 US at 316.

Defendant's final contention is not well taken. In the first place *Rabe v. Washington,* supra, is distinguishable from the case at bar because in *Rabe* the Washington Supreme Court determined that the motion picture "Carmen Baby" was not obscene under the *Roth* test if the viewing audience consisted only of consenting adults. In the instant case we have already

---

hibit, sell, distribute, display for sale or distribution, or having knowledge of the contents thereof shall have in his possession with the intent to sell or distribute any book, magazine, pamphlet, comic book, newspaper, writing, photograph, motion picture film, phonograph record, tape or wire recording, picture, drawing, figure, image, or any object or thing which is obscene; or

"(2) Having knowledge of the contents thereof shall cause to be performed or exhibited, or shall engage in the performance or exhibition of any show, act, play, dance or motion picture which is obscene;

"Shall be guilty of a gross misdemeanor."

determined that the subject movie is obscene under the *Roth* test. Secondly, the record in the case at bar shows that defendant did not challenge either the statute or the indictment on this ground in the trial court. Further, according to the record the state's evidence concerning the viewing of the film by several minors standing outside, and by some nearby residents and passing motorists, and their adverse reactions thereto, was admitted without objection on this particular ground.[④]

■ As we have consistently held, we will not review any alleged error not properly preserved in the trial court and raised for the first time on appeal. *U. S. National Bank v. Lloyd's,* 239 Or 298, 325-26, 382 P2d 851, 396 P2d 765 (1964); *State v. Jorgensen,* 8 Or App 1, 13, 492 P2d 312 (1971), Sup Ct *review denied* (1972).

Affirmed.

SCHWAB, C.J., dissenting.

It is my belief that regardless of how offensive we may deem it, numerous decisions of the United States Supreme Court tell us that the movie, "Southern Comforts," is constitutionally protected, in so far as it is shown only to adults desirous of seeing it.[①] However, the majority, by affirming this conviction for disseminating obscene matter under a statute, former

---

[④] There were no instructions given by the court that this evidence was to be considered by the jury as an element of the offense charged.

[①] *See,* Bloss v. Michigan, 402 US 938, 91 S Ct 1615, 29 L Ed 2d 106 (1971); Cain et al v. Kentucky, 397 US 319, 90 S Ct 1110, 25 L Ed 2d 334, *rehearing denied,* 397 US 1081 (1970); Schackman et al v. California, 388 US 454, 87 S Ct 2107, 18 L Ed 2d 1316 (1967); Jacobellis v. Ohio, 378 US 184, 84 S Ct 1676, 12 L Ed 2d 793 (1964); Kingsley Pictures Corp. v. Regents, 360 US 684, 79

ORS 167.151, which is no longer the law of Oregon, may, I fear, be sending the state on its way toward a replay of *State v. Childs,* 252 Or 91, 447 P2d 304 (1968), *cert denied* 394 US 931 (1969). The course of that case is vividly described in D. Reno, Jr., *Obscenity Revisited —1972,* American Bar Association Journal, July 1972, 736 at 739 :

"The frustration and expense of protracted obscenity litigation is most appropriately portrayed

S Ct 1362, 3 L Ed 2d 1512 (1959); Times Film Corp. v. Chicago et al, 355 US 35 (1957).

The movie held to be constitutionally protected in Times Film Corp. v. Chicago et al, supra, was described by the lower court in these terms:

"The film, as an exhibit in this case, was projected before and viewed by us. We found that, from beginning to end, the thread of the story is supercharged with a current of lewdness generated by a series of illicit sexual intimacies and acts. In the introductory scenes a flying start is made when a 16 year old boy is shown completely nude on a bathing beach in the presence of a group of younger girls. On that plane the narrative proceeds to reveal the seduction of this boy by a physically attractive woman old enough to be his mother. Under the influence of this experience and an arrangement to repeat it, the boy thereupon engages in sexual relations with a girl of his own age. The erotic thread of the story is carried, without deviation toward any wholesome idea, through scene after scene. The narrative is graphically pictured with nothing omitted except those sexual consummations which are plainly suggested but meaningfully omitted and thus, by the very fact of omission, emphasized * * *." Times Film Corporation v. City of Chicago, 244 F2d 432 at 436 (7th Cir 1957).

The movie held to be constitutionally protected in Cain et al v. Kentucky, supra, was described by the lower court in these terms:

"* * * The film is a 90-minute motion picture devoted almost entirely to the sexual encounters of one female by the name of Eve. It opens by showing Eve nude in her bedchamber engaged in the practice of caressing herself in a suggestive manner to the accompaniment of her father's violin. She progresses to a passionate love scene with her fiance, Svend, while lying fully clothed on top of him in her

by a case prosecuted in Oregon. The defendant was convicted in the trial court for selling obscene materials, and the Oregon Supreme Court affirmed the conviction (447 P. 2d 304). The United States Supreme Court denied certiorari (394 U.S. 931). The defendant then instituted a federal habeas corpus proceeding, and the Oregon federal district court found that the materials were not obscene (300 F. Supp. 649). Oregon then appealed to the Ninth Circuit Court of Appeals, which reversed the district court and held the materials were obscene (431 F. 2d 272). Exhausting his last appellate remedy, the defendant filed another petition for certiorari with the United States Supreme Court. This time the Supreme Court granted certiorari, reversed the Ninth Circuit and *per curiam* held the materials constitutionally protected, citing *Redrup* (401 U.S. 1006).

"During the course of the litigation, a three-judge federal district court declared the Oregon

---

bedchamber. This act is performed with the camera full on the subject. From this the film proceeds to the act of intercourse with a married patient, Heinz Goertzen, in a hospital room where Eve is employed as a nurse. This act she solicits with the use of nude photographs taken of her by her fiance for this specific purpose. During the course of the sequence, the camera focuses upon the head of the male partner and the stomach area of the female partner. It shows the male partner caressing with kisses the area between the navel and the pubic hair. The camera then shifts during the act of intercourse to the face of the female subject. After this, the film follows the life of Eve from one act of sexual intercourse to another until it has been accomplished some five times, all with different partners. Each time the act is as vividly portrayed upon the screen as was the scene in the hospital room. In one instance the sex act is in the form of rape. The film represents nothing more than a biography of sexuality. There is no story told in the film; it is nothing more than repetitious episodes of nymphomania. Nudity is exposed in such manner that if the subject had posed in person instead of on film she would have immediately been arrested for indecent exposure." Cain v. Commonwealth, 437 SW2d 769 at 774-75 (Ky 1969).

obscenity statute [former ORS 167.151] unconstitutional (321 F. Supp. 642) [Hayse v. Van Hoomissen, 321 F Supp 642 (D Or 1970), *vacated on other grounds*, 403 US 927, 91 S Ct 2248, 29 L Ed 2d 705 (1971)], in spite of the statute's having passed constitutional scrutiny two years earlier by the Oregon Supreme Court."

It seems to me that the United States Supreme Court has held that the pictorial or verbal portrayal to consenting adults, of nudity and sexual activity, of the type with which we are here concerned, both "normal" and "abnormal,"[2] is a constitutionally protected form of expression. *See,* n 1, supra. This is my understanding of what we were holding in *State v. Oregon Bookmark Corp.,* 7 Or App 554, 492 P2d 504 (1972), where we said that magazines which portrayed nudity, and implied various forms of sexual activity at least as specifically as does "Southern Comforts" were constitutionally protected.

The key words are "consenting adults." In *Redrup v. New York,* 386 US 767, 769, 87 S Ct 1414, 18 L Ed 2d 515, *rehearing denied,* 388 US 924 (1967), the Supreme Court clearly indicated that it would countenance much more restrictive standards in statutes governing sexual material if such statutes "reflected a specific and limited state concern for juveniles" and a concern for "* * * assault upon individual privacy

---

[2] The constitutional protection of movies is not confined to the expression of ideas that are conventional or shared by a majority. Kingsley Pictures Corp. v. Regents, supra (movie that possibly advocated adultery held constitutionally protected); *see also,* Manual Enterprises v. Day, 370 US 478, 82 S Ct 1432, 8 L Ed 2d 639 (1962) (magazines with pictures of nude males admittedly for sale to homosexuals held constitutionally protected); One, Incorporated v. Olesen, 355 US 371 (1958), *rev'g* One, Incorporated v. Olesen, 241 F2d 772 (9th Cir 1957) (magazine story describing lesbian activity held constitutionally protected).

by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it." In *Rabe v. Washington,* 405 US 313, 92 S Ct 993, 31 L Ed 2d 258 (1972), the Supreme Court reiterated this doctrine.

In reaching the conclusion that even consenting adults cannot see "Southern Comforts," the majority invokes the ill-defined standards that were incorporated into former ORS 167.151. The problems produced by courts trying to sit as censors to subjectively determine what material is patently obscene under these elastic standards illustrate the practical wisdom of the 1971 legislative assembly in repealing former ORS 167.151 and replacing it with Oregon's new obscenity laws. No longer are the Oregon courts called upon to make the unseemly and fruitless "I-know-it-when-I-see-it" type of determination. Under the new obscenity laws there are explicit statutory definitions that avoid these problems. *See,* ORS 167.060. Under these definitions, a display of "Southern Comforts" to an unmarried minor under 18 years of age would clearly be a crime. ORS 167.065(1)(a). As stated in *Obscenity Revisited—1972,* supra, at p 739:

> "A review of these cases [the United States Supreme Court decisions above referred to and others] by the Oregon legislature could only have reflected that the prosecution of abstract principles concerning obscenity requires too much expense, time and judicial ado [to no avail—*see,* Childs v. Oregon, 401 US 1006, 91 S Ct 1248, 28 L Ed 2d 542 (1971)]. Consequently, the legislature enacted an innovative approach to controlling the commercialization of explicit sexual materials * * *."

For the foregoing reasons, I respectfully dissent.