Argued September 6, affirmed September 26, 1974

CHEYNE, *Respondent, v.* DEIKE ET UX, *Appellants.*

526 P2d 557

*Stanley C. Jones,* Klamath Falls, argued the cause for appellants. With him on the briefs were Giacomini, Jones & Zamsky, Klamath Falls.

*Robert S. Hamilton,* Klamath Falls, argued the cause for respondent. With him on the brief were Beddoe & Hamilton, Klamath Falls.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, BRYSON* and SLOPER, Justices.

---

* Bryson, J., did not participate in this decision.

SLOPER, J. (Pro Tempore).

This is a personal injury action arising under the guest passenger statute, ORS 30.115,[1] in which plaintiff seeks to recover damages for injuries sustained while a passenger in a car operated by defendant Mary Lynn Deike and owned and maintained by defendant Harold Deike under the family purpose doctrine. The jury, after a lengthy trial, returned a verdict for plaintiff, and defendants appeal. We affirm.

Defendants contend that the trial court erred in denying defendants' motion for a mistrial; and that the court erred in its instructions to the jury.

The trial lasted two weeks, commencing on November 21, 1973, and concluding on December 5, 1973. Toward the end of the trial, sometime on the 29th of November, one of the jurors, Dolly Phillips, reported to the trial judge that her husband was seriously ill but that she preferred to remain on the jury and that she felt that she was capable of continuing as a juror.

---

[1] ORS 30.115:

"No person transported by the owner or operator of a motor vehicle, an aircraft, a watercraft, or other means of conveyance, as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication. As used in this section:

"(1) 'Payment' means a substantial benefit in a material or business sense conferred upon the owner or operator of the conveyance and which is a substantial motivating factor for the transportation, and it does not include a mere gratuity or social amenity.

"(2) 'Gross negligence' refers to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others."

Later that afternoon her husband died. She remained with the jury the rest of that day and the following day. Counsel for the parties were apparently aware of this situation late on the afternoon of Friday, the 30th of November, and that the funeral for the juror's husband was scheduled for Monday, December 3rd. After discussing this event with counsel, the trial judge recessed the trial until Tuesday, the 4th of December, so that the juror could attend her husband's funeral. On Tuesday morning the juror contacted the trial judge by telephone and advised that she was unable to report that morning, but would report on the following day. The trial judge advised the juror that this was satisfactory and advised her and the other jurors to return on Wednesday. He made this decision without conferring with counsel.[2] Counsel for defendants objected to this second continuance and moved for a mistrial on Tuesday morning.[3] Defense counsel did not move for a mistrial on Friday when first made aware of the problem. His objection to the first continuance was directed to the proposition that it would work a hard-

[2]

"THE COURT: Okay, this is Tuesday morning, December 4, at roughly 9:30 in the morning, the date at which we were going to seek to complete the trial. At 8:40 this morning Mrs. Phillips herself called me and said she felt she was unable to report this morning but that she believed that she would be able to report tomorrow morning and I asked her if it was her belief that she couldn't report at any time today and she answered yes that that was so but she felt she could report tomorrow morning. So, I have caught as many of our juror panel as possible and instructed them not to report until tomorrow morning at 9:30. Is there anything further?"

[3]

"MR. JONES: Well, I want to tell the Court that I think under the circumstances that the Court should grant a mistrial. The evidence is all in and I don't (sic) whether there are any appeal rights at this point but certainly I think the jury should be discharged."

ship on defendants who had traveled some distance to attend the trial.[4]

■ Defendants first contend that the trial court erred in failing to excuse from further service juror Dolly Phillips, whose husband became seriously ill and died during the course of the trial, and in denying defendants' motion for a mistrial. The alleged error is based upon ORS 17.225.[5] The first alternative in the statute was unavailable to the trial judge as there is an absence of a showing in the record that there was an alternate juror available. Another alternative under the statute provides that " * * * or the jury *may* be discharged and a new jury then or afterwards formed." (Em-

---

[4]

"MR. JONES: Your Honor, let the record show that we are in Chambers and that this case has already taken a grossly unreasonable length of time. Mr. Deike who is in the active service with the Air Force has traveled here from Utah having to stay in a motel with his family and Miss Deike traveled from Southern Nevada and they have been here for this case going on two weeks and it is a hardship on them. It is Friday and I agree and because of the length of time it took us to get through the testimony today it is late but to adjourn this case after it has already been adjourned over one previous weekend seems to me to be a deprivation to due process of the parties and therefore I strongly suggest which is something that is frequently done, there is nothing improper or illegal about it, both for the benefit of the jury and for the benefit of the parties that we hold Court on Saturday which is tomorrow. There is no reason why these people should be held here for an additional four days which is going to be what occurs if the Court adjourns until Tuesday."   .

[5] ORS 17.225:

"If, after the formation of the jury, and before verdict, a juror becomes sick, so as to be unable to perform his duty, the court may order him to be discharged. In that case, unless an alternate juror, seated under ORS 17.190, is available to replace the discharged juror or unless the parties agree to proceed with the remaining jurors, a new juror may be sworn, and the trial begin anew; or the jury may be discharged, and a new jury then or afterwards formed."

phasis added.) We might well dispose of defendants' contention that a mistrial should have been granted by holding that the motion was not timely and promptly made because of defendant's failure to make such motion as soon as they were aware of the alleged incapacity of the juror, which occurred on Friday afternoon, or earlier, instead of waiting until the following Tuesday morning. Although the defendants did make such motion for a mistrial prior to the time the jury began its deliberations, the motion should have been made when counsel was first apprised of the problem with the juror. In *State v. Roden,* 216 Or 369, 371, 339 P2d 438 (1959), we said: "It is well settled that a party who learns of the misconduct of a juror during the trial may not keep silent and take advantage of it in the event of an adverse verdict." However, even if defendants' motion is considered to have been timely, we believe that the trial judge's decision under the statute is a discretionary one and will only be reversed by this court if the decision is a manifest abuse of such discretion.

There are three cases cited by defendants in support of their position: *Salistean v. State,* 115 Neb 838, 215 NW 107, 53 ALR 1057 (1927), where the court held that a criminal defendant was not subjected to double jeopardy because of a prior trial in which the jury had been dismissed due to the illness of a juror's wife and the death of his new-born child. That case contains language supportive of defendants' position. However, the court did not hold that it was necessary to dismiss the juror under the conditions described, but did rule that the trial court had acted properly in dismissing the juror in that case, defendants having failed to show any specific error in the procedure of the trial court.

The two other cases are *Spelce v. State,* 20 Ala App 412, 103 S 694 (1924), and *Weaver v. State,* 45 Ala App 243, 228 S2d 857 (1969). In *Spelce v. State,* supra (20 Ala App 412), the court held that in a first-degree murder case the death of a juror's mother would render him incapable of fairly deliberating upon the case and that it was the duty of the court to discharge him. And in *Weaver v. State,* supra (45 Ala App at 244), the court, without comment, held that: "The motion for a mistrial was due to be granted."

■ In each of these cases the Appeals Court of Alabama is firmly committed to the rule that death during trial of a member of a juror's family is grounds for mistrial. We do not believe that either sound reasoning or logic requires that such an automatic rule be adopted in this state.

Most of the cases cited by plaintiff concern cases of jury misconduct or bias. The thrust of plaintiff's argument is that the trial judge should be granted wide discretion in ruling on such matters. The reasoning in these cases may by analogy be applied to the issue in this case. In either type of case the issue is the same, i.e., the ability of a juror to fairly direct his attention to the matters at issue and to deliberate upon the case. Since we hold that under ORS 17.225 the trial judge's decision is a discretionary one, we will review some of the cases discussing discretion in order to determine in the instant case if the trial judge's decision was an abuse of his discretionary power.

With regard to juror bias, this court held in *Mount v. Welsh,* 118 Or 568, 583, 247 P 815 (1926):

"* * * However, it is settled law in this jurisdiction that the granting of a new trial on account of misconduct or disqualification of a juror is within

the discretion of the trial court, and that its determination will not be reversed except for manifest abuse: \* \* \*. Neither will such conclusion be set aside when attacked on appeal except where there is clear and manifest abuse of discretion: \* \* \*."

■ It has also been held by this court that it is discretionary with the trial court to grant or deny a mistrial because of juror misconduct. *State v. Tracy,* 246 Or 349, 356, 425 P2d 171 (1967). The misconduct in the *Tracy* case was an alleged conversation between a juror's wife and the defendant's mother, and the court stated:

"In *Burnett v. Weinstein,* 154 Or 308, 59 P2d 258 (1936) this court held:

" '\* \* \* It is well settled in this jurisdiction that the granting of a new trial on account of the misconduct of a juror is within the discretion of the trial court and that its determination will not be reversed except for an abuse of such discretion: \* \* \*,'

"We hold that the court did not err in denying defendant's motion for a new trial on the basis of the alleged misconduct of the juror."

And in *Saunders v. Williams & Co.,* 155 Or 1, 12, 62 P2d 260 (1936), in which the alleged misconduct of a juror involved an unauthorized visit by a juror to the scene of the accident, the court held:

"It is well settled that the refusal to grant a new trial is a matter for the discretion of the trial court, under facts such as involved in this case, and will not be reviewed upon appeal except for his abuse of that discretion: \* \* \*."

There are a number of cases in the federal system dealing with the illness or other incapacity of jurors. While most of these cases questioned the dis-

missal of a juror rather than the failure to dismiss him, the principle is the same.

In *United States v. Cameron*, 464 F2d 333, 335 (3d Cir 1972), the court held that there was no error in the trial judge's decision to dismiss a juror who appeared to be sleeping during trial and the court noted that "[a]lthough the factual situations differ, the common thread of the cases is that the trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired."

And in *United States v. Hoffa*, 367 F2d 698, 712 (7th Cir 1966), in which the mother of a juror had become ill, the trial judge advised counsel in chambers and asked counsels' preference in dealing with the situation and although counsel suggested consulting with the juror, the judge declined to do so and excused the juror without further consideration. The appellate court approved this procedure.

In the case of *United States v. Grosso*, 358 F2d 154, 158-160 (3d Cir 1966), which is somewhat factually similar to this case, the trial judge refused to excuse an ill juror, and instead postponed the jury's deliberations. No prejudice was found to result from the postponement even though the appellant argued that the judge by his action had forced a compromise verdict.

■■ Defendants in their brief and again at time of oral argument, complain of the manner in which the trial judge continued the trial of the case without consulting counsel and giving them an opportunity to be heard. We suggest to the trial bench that the better procedure would be for the trial judge, upon receipt

of information concerning the inability of a juror to continue, to immediately advise counsel and to give them an opportunity to be heard. While such notice and opportunity to be heard are not mandatory under the decisions, it would be advisable. In *United States v. Houlihan*, 332 F2d 8, 12-13 (2d Cir 1964), the trial judge without conferring with counsel, excused on the eighth day of trial a juror who was a practical nurse and who had a patient suffering an emergency illness. No transcript was taken of the judge's conversation with the juror. The court stated:

> "Although every effort should be made to afford such an opportunity, we do not think that failure to do so in a case such as this presents grounds for reversal. Situations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel — e.g., if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend. We hold that no error was committed by the trial judge in excusing the juror prior to the arrival of defendants and their counsel. * * *." 332 F2d at 13.

■ Defendants' second assignment of error contends that they were deprived of a fair trial because the trial judge instructed the jury on the standards of ordinary negligence and gross negligence without adequately explaining to the jury that the instructions on ordinary negligence were given to explain the difference between ordinary and gross negligence. Defendants rely principally on the case of *Smith v. Laflar*, 143 Or 65, 20 P2d 391 (1933). In that case the court held that it was error to instruct on ordinary negligence in a gross negligence case without pointing out that the purpose of the instruction was to distinguish

it from gross negligence and in giving an instruction on the duty of the driver of a motor vehicle to his passengers, which duty existed prior to the enactment of the applicable guest statute. The court said:

"* * * This instruction is absolutely contradictory and inconsistent with those given relative to gross negligence. We are unable to say with any degree of certainty by which standard of care the conduct of the defendant was measured." 143 Or at 69.

It appears that the court reversed this case because of the instruction regarding the operator's duty to his passengers as it existed prior to the guest statute. That portion of the decision dealing with giving instructions on ordinary negligence in a guest passenger case has certainly been modified in more recent cases approving such dual instructions.

In *Turner, Admr. v. McCready,* 190 Or 28, 58, 222 P2d 1010 (1950), the court approved the giving of instructions on ordinary as well as gross negligence and said:

"Negligent conduct is a part of the sum total which makes up gross negligence, and when a trial court is instructing the jury in a guest case it is not necessarily error to define negligence in one paragraph and gross negligence in another. The rule which requires that the instructions should be construed as a whole will normally be applied, although we think it the better practice for the court in the very instructions which define negligence to caution the jury that negligence alone is not ground for recovery. * * *."

And in *Rogers, Adm'r. v. Southern Pacific Co.,* 190 Or 643, 651, 227 P2d 979 (1951), the court approved the giving of instructions on ordinary as well as gross negligence and concluded that: "The question in every

case is whether, upon a view of the instructions as a whole, it can be reasonably said that the jury was probably misled, and, as already stated, we are of the opinion that that is not true of the instructions under consideration."

In one Oregon case it was held that it is error not to instruct on ordinary negligence. *Fossi v. George,* 191 Or 113, 118, 228 P2d 798 (1951):

> "An additional reason which impelled the trial court to grant a new trial was that, while it instructed the jury upon gross negligence, it failed to instruct it as to what constitutes ordinary negligence. We have held that 'it is entirely proper in a gross negligence case to instruct the jury on the meaning of negligence,' and have expressed doubt that a jury, without an understanding of the meaning of negligence, would be able to determine that a party has been guilty of gross negligence. *Rogers, Adm'r. v. S. P. Co. et al.,* 190 Or. 643, 227 P.2d 979. We have examined the entire charge, and do not find that it contained any definition of simple or ordinary negligence. In our opinion, omission to instruct the jury in that regard was error."

An examination of the trial judge's instructions shows that in several places in the instructions the jurors were advised that plaintiff could prevail only if the evidence established that defendants were guilty of gross negligence:

> "* * * First of all you should determine whether or not the driver of the Volkswagen was grossly negligent or reckless as the Court will define those terms for you. If she was not, the plaintiff cannot recover. * * *.

> "If after this reasoning process you conclude that the defendant was grossly negligent * * *.

> "* * * * * *.

"In order to recover, it is necessary that the plaintiff prove by a preponderance of the evidence that the defendant was grossly negligent * * *.

"* * * * * *.

"Proof of common law or statutory negligence on the part of the driver does not subject defendant to liability in this case. Plaintiff must prove gross negligence.

"Gross negligence is negligence which is materially greater than the mere absence of reasonable care under the circumstances. Gross negligence is characterized by conscious indifference to or reckless disregard of the rights of others.

"The mere fact that an accident is preceded by several acts of ordinary negligence is not, alone, sufficient to establish gross negligence; it is only when all of the acts combined with the existing circumstances show a foolhardy attitude on the part of the driver that gross negligence has been established."

The instructions given by the trial judge concerning ordinary negligence are not criticized by defendants for their content, but only for the reason that they are confusing, conflicting and inconsistent with those instructions given on gross negligence.

Our reading of the instructions in this case, as a whole, leads us to the conclusion that the trial judge sufficiently apprised the jury that defendants' duty to plaintiff was to be measured by gross negligence and by the standards fixed by the guest statute and that they were not misled by the instructions as to the standard of care required of defendants.

Affirmed.