561 P.2d 669 (1977)
28 Or.App. 829
Kirby Dean GREVER, Petitioner,
v.
OREGON STATE CORRECTIONAL INSTITUTION, Corrections Division, Respondent.
Court of Appeals of Oregon.
Argued and Submitted February 23, 1977.
Decided March 21, 1977.
*670 Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.
Thomas H. Denney, Asst. Atty. Gen., Salem, argued the cause for respondent. With him on the brief were James A. Redden, Atty. Gen., and W. Michael Gillette, Sol. Gen., Salem.
Before SCHWAB, C.J., and THORNTON and RICHARDSON, JJ.
RICHARDSON, Judge.
Petitioner, an inmate of the Oregon State Correctional Institution (OSCI), was found guilty by a prison disciplinary committee of conspiracy to commit disruptive behavior in violation of Prison Disciplinary Rule 1. He raises four contentions; (1) his request for representation was improperly denied, (2) the evidence was not sufficient to establish the charge, (3) the additional charge of *671 attempt to commit disruptive behavior upon which the committee made no finding should have been dismissed, and (4) the sanctions imposed constituted excessive, cruel and unusual punishment.
An OSCI Group Living Manager received information a sit-down strike among some of the inmates was contemplated in the recreation yard. During his investigation he received information from confidential reliable informants that petitioner and two other inmates had contacted other OSCI residents during that day and the previous day telling them a sit-down strike was scheduled and that letters had been sent to a television station and two newspapers complaining of conditions in the institution. Many of the inmates became aware of the investigation and returned to their cells at the appointed time and refused to participate in the sit-down strike. Petitioner and one of the other inmates charged in the conspiracy remained in the yard and actively agitated the other inmates to support them in the strike. The informants reported "Grever was heard to make a statement that he would throw a chair into the TV set to get a disturbance started, then the rest of the inmates would have to go along." Based upon the investigation, petitioner was charged with conspiracy to commit disruptive behavior and attempt to commit disruptive behavior.
During the disciplinary hearing the following colloquy occurred between petitioner and the committee chairman:
"* * *.
"BERKSHIRE: Okay. Do you understand Rule 1, Disruptive Behavior?
"GREVER: No, I don't.
"BERKSHIRE: Rule 1, Disruptive Behavior states: No resident shall engage in the advocation, encouragement, promotion or creation of a disturbance. A disturbance is a substantial disorder characterized by unruly, noisy or violent conduct which disrupts the orderly administration of the institution, or creates an unreasonably annoying condition which poses a direct threat to the security and/or safety of the institution. Do you understand that?
"GREVER: Not really. That means I was supposed to have, uh, made a violent act or somethin against the institution?
"BERKSHIRE: Well it says is characterized  a disturbance is characterized by unruly, noisy or violent conduct. Unruly conduct would not necessarily have to be violent conduct or noisy conduct.
"GREVER: Yes. In other words it could be, uh 
"BERKSHIRE: It could be such a thing as a sitdown strike or something of that nature.
"GREVER: Yes. I know what you're talking about.
"BERKSHIRE: Okay. Do you understand Rule 13, Conspiracy?
"GREVER: Yes.
"* * *
"BERKSHIRE: Okay, do you understand Rule 5, Unauthorized Possession of Property? (unrelated) Attached to each report of misconduct was a statement informing you of your rights in a hearing of this nature. Do you understand those rights?
"GREVER: Uh, pretty much so.
"BERKSHIRE: Are there any about which you have a question, Mr. Grever?
"GREVER: Yes, uh, I'd like to  question about having someone represent me on this.
"BERKSHIRE: Well 
"GREVER: Because, uh 
"BERKSHIRE: Are you mentally competent, Mr. Grever?
"GREVER: What's that mean?
"BERKSHIRE: Well, do you know what's going on 
"GREVER: You had to explain this to me once before.
"BERKSHIRE: Are you a mental defective? Are you a moron, or an idiot?
"GREVER: No, uh, I got a low school average.
"BERKSHIRE: What's your school average?
"GREVER: Six somethin.

*672 "BERKSHIRE: Well that's not  does not really demonstrate any mental incompetence.
"GREVER: What do you mean, well  put it this way, uh, I can barely read good, I'm not very good at word knowledge at all, you know, and uh, 
"BERKSHIRE: But you can generally tell your 
"GREVER: I couldn't even defend myself on this.
"BERKSHIRE: You can generally tell your side of what happened, right?
"GREVER: Uh, in some words, yes, but not all the way, no.
"BERKSHIRE: Well we're not interested in fancy words, we're just interested in learning what you, uh 
"GREVER: Well I don't know, I just thought, you know, that I think I should have someone represent me on that one thing, because otherwise I'm liable to get screwed and not know what's happening.
"* * *
"BERKSHIRE: Well the Committee is not going to grant your representation 
"GREVER: You mean I don't get no defense at all?
"BERKSHIRE: Uh, you'll be given the opportunity to defend yourself  to speak for yourself and we can see no merit in granting you representation since it's pretty obvious that you are able to speak for yourself.
"GREVER: Well it don't make no difference if I speak for myself, because, uh, I was told by the guy that investigated this, the guy that wrote me up on this yesterday that, uh, it was his word against mine and my word was no good in this Committee.
"* * *."
Petitioner agrees a prison inmate does not have a constitutional right to retained or appointed counsel in disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Bonney v. OSP, 16 Or. App. 509, 519 P.2d 383, aff'd 270 Or. 70, 526 P.2d 1020 (1974). He instead pins his argument to the applicable administrative rule.
"Representation
"a. In a hearing, upon a disciplinary committee finding of need based upon consideration of language barriers, competency and capacity of the resident in relation to a charge or surrounding facts, provision shall be made for assistance by a representative of the resident. Such representation is limited to a staff member or a volunteer resident." Rule IV(3)(a).
The burden is upon the inmate to make a showing of need for representation under that rule. Gilmore v. OSP, 17 Or. App. 348, 521 P.2d 1313 (1974). Once a finding of need is made the disciplinary committee must accord the representation provided in the rule; there is no discretion to refuse representative assistance once that finding is made. Bonney v. OSP, supra, 270 Or. at 91, 526 P.2d 1020. See also Gilmore v. OSP, supra. However, in determining if a need is present we accord great deference to the committee which has an opportunity to observe the inmate during the inquiry as to whether he should be given representation.
Although use of the words conspiracy to commit disruptive behavior in describing the charge may seem complex for an inmate with a sixth grade education, when reduced to its basic essentials petitioner was charged with acting together with two other inmates to cause a sit-down strike. The committee chairman read and explained in simplified language these essentials and petitioner said he understood.
Petitioner argues a question by the committee chairman "are you a mental defective? Are you a moron, or an idiot?" discloses a misinterpretation of Rule IV(3). If this were the only criterion applied by the committee in determining need for representation we would agree the rule was misapplied. However, as disclosed by the colloquy reproduced earlier in this opinion the chairman asked if petitioner understood the charges and his rights and inquired if he knew what was going on and could speak for himself. Based upon this record *673 we are satisfied the committee properly applied Rule IV(3) in denying petitioner representation.
Petitioner's second assignment of error asserts the evidence does not support the charge of conspiracy. We review for substantial evidence and find there was substantial evidence to support the charge made against petitioner.
Petitioner was charged with two inchoate offenses arising out of the same incident. Attempt to commit disruptive behavior in the form of a sit-down strike and conspiracy to commit the same behavior. He was found guilty of conspiracy but the committee specifically stated it made no finding concerning the attempt charge. In his third assignment of error petitioner asserts the committee should have finally disposed of the attempt charge. We agree.
It is proper to allege alternative violations of different rules arising out of the same conduct, but it would not be proper to find petitioner guilty of both violations. Hindman v. OSP, 25 Or. App. 61, 547 P.2d 646 (1976). Although the rules of procedure for disciplinary hearings do not specifically require a finding on each charge it is a fair implication from the character of the proceedings that it be done. One primary purpose of the disciplinary hearing is to determine if the specific charges made by the reporting officer of the institution have been established by the evidence. If they have not this fact should be noted. The record of disciplinary charges remains a part of the inmate's file which is used in assessing his progress, in future disciplinary actions and by the parole board in deciding if the inmate should be paroled. It is important the record clearly reflect the disposition of alleged violations of disciplinary rules which proceed to hearing in order that there be no misunderstanding in their subsequent use. In this instance the statement of the committee that it made no finding on the attempt charge is ambiguous. It could be interpreted as meaning there was insufficient evidence to sustain the charge or that the committee declined to consider it since it found petitioner guilty of conspiracy. We interpret the prison disciplinary rules to require a final disposition on each charge. We remand for such a disposition.
The final contention of petitioner is that the sanctions imposed are excessive, cruel and unusual in violation of Art. I, §§ 15 and 16 of the Oregon Constitution. The sanctions imposed were one year and 60 days in segregation and forfeiture of 608 days statutory "good time." We find the sanctions neither unlawful or unconstitutional.
Remanded with instructions.