Argued January 7, affirmed March 11, petition for
rehearing denied June 9, 1964

## STATE OF OREGON *v.* TURNER
390 P. 2d 177

*Marvin S. Nepom,* Portland, argued the cause for
appellant. On the brief was Leo Levenson, Portland.

*John D. Burns,* Deputy District Attorney for Mult-
nomah County, argued the cause for respondent. With

him on the brief was George Van Hoomissen, District Attorney for Multnomah County.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendant, David Franklin Turner, from a judgment of the circuit court, which adjudged him guilty of the crime proscribed in ORS 166.270, which reads:

"* * * any person who has been convicted of a felony * * * who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearm * * * shall be punished upon conviction * * *."

The judgment of conviction was based upon the verdict of a jury.

The defendant, in appealing, presents two assignments of error. The first of them was based upon the circuit court's denial of a motion for "an order suppressing the hereinafter described evidence seized at the time of his arrest as the result of the illegal search of that certain automobile defendant was in immediately prior to the illegal search, to wit, a gun and ammunition found in said automobile, * * *." The motion for suppression was based upon a contention that the search and seizure were made in violation of "Amendments IV, V and XIV of the United States Constitution and Article I, Section IX of the Oregon Constitution * * *."

The second assignment of error challenges a ruling which was made during the trial and which re-

ceived in evidence the pistol and ammunition that are mentioned in the part of the defendant's motion to suppress which is quoted in a preceding paragraph. According to this assignment of error the "search of the automobile was not an incident to the arrest * * * ."

February 4, 1963, at three a.m. Wallace E. Renoud and Jim A. Lauer, officers in the police department of Portland, while driving their police car along Harbor Drive of Portland, observed the car in which the defendant and his companion, Thomas Orval Fudge, had been riding. When the two officers saw the car just mentioned, it was standing still, without lights, in a place where parking was normally unauthorized. The car aroused the interest of the officers and they thereupon stopped their car. Officer Renoud recognized Fudge as a man whom he had arrested on a prior occasion on a charge of burglary. The defendant and Fudge told the officers that their supply of gasoline had become exhausted and that they were thereby forced to stop their car at that place.

When the officers came upon the defendant and Fudge they noticed, so the officers swore, that the two men were intoxicated. The officers described the alcoholic breath of the two men, their slurred speech and the unsteadiness of their balance. Fudge, as a witness, testified, "I was pretty drunk." The defendant, in testifying, mentioned a succession of taverns that he and Fudge had visited a few hours before their arrest, and added, "I had six or seven beers." Having concluded that the two men were intoxicated, the officers informed them that they were under arrest upon a charge of being intoxicated upon the streets of the city. The officers had another prisoner in their cus-

tody and therefore placed handcuffs upon the defendant and Fudge.

The defendant Turner testified that when the officers reached him one of them "asked for identification, and I showed him my driver's license. And he said, 'You have been convicted of a burglary,' and I said, 'No.'" Under further examination by his own attorney, Turner testified: "I was an ex-convict with a prior record, * * *. I had a conviction in Federal Court on the Dwyer Act. * * * Twice I had this."

Fudge, the defendant's companion, conceded that he had been convicted of burglary.

It is clear from the testimony of the defendant that he and Fudge were each arrested on a charge of intoxication before any search of their car was attempted. There is no claim that the search preceded the arrest.

Officer Lauer testified that when he threw the beam of his flashlight through the rear window of the car that the defendant and Fudge had been operating, he saw "a box of ammunition." This occurred, according to Lauer's testimony, after the arrest had been made. Upon discovering the ammunition Lauer asked the defendant and Fudge "where the Luger was," and was met with a denial upon their part of any knowledge of a gun. Presently, when Lauer opened the front door next to the driver's seat of the car that the defendant had been operating, and reached under the seat, he found a Belgium nine millimeter automatic pistol. The defendant had occupied the seat a few minutes previously. The pistol contained ammunition. Officer Renoud gave testimony in accord with the above.

As a witness in this case the defendant Turner testified that when Lauer displayed the gun "I knew

I was dead then, me being an ex-convict." Thus the felony which consists of a convict possessing a pistol was being committed in the presence of the officer.

Neither the defendant nor Fudge denied that both the gun and the ammunition were found in the car which they had been operating. Nor did either of them claim that the search preceded the arrests. Both, however, disavowed all knowledge of the presence in the car of the gun and the ammunition. Fudge claimed ownership of the gun.

Officer Lauer, he being the police officer who made the search, testified that he did so "to check the vehicle for anything that might be used in the way of force—if they made a break for the car, * * * To see if they had anything that could be used against us as a weapon, if they made a break for it."

■ Before the trial judge denied the defendant's motion to suppress the gun and the ammunition he heard in his chambers all of the evidence offered by the parties concerning the search and the seizure. Upon denying the motion he entered findings, which state:

"1. That this search was made as an incident to a lawful arrest.

"2. That there was in addition probable cause for the search based upon the officers' information regarding the subjects and from their observance of the ammunition in plain view of the vehicle.

"3. That the search and seizure was legal."

Postponing until later an expression of our reaction to the third of the above findings, we now state that we concur in the first and second.

■ Every search and seizure which is made without a warrant is not prohibited by the Federal and Oregon Constitutions. The Fourth Amendment to the Federal

Constitution affords security "against unreasonable searches and seizures." Article I, Section 9 of the Oregon Constitution prohibits every "unreasonable search or seizure."

In the case at bar the place where the defendant parked the car which he and Fudge had been operating properly aroused the interest of the officers. When the latter spoke to Fudge and the defendant they found cause to arrest them for intoxication.

Intoxication upon a public street, in addition to being a violation of one of Portland's ordinances, is a misdemeanor under this state's statutes. ORS 166.160.

When the officers encountered the car which the defendants had been driving, and pulled up beside it, the line of traffic in which the parties had been moving was blocked. Quick action was necessary. Time was not available for cool deliberation. By this time the officers had in their custody, not only their original prisoner with whom they had started, but also had under surveillance the defendant and Fudge, the latter of whom was very badly intoxicated.

Fudge was very large—six feet and seven inches tall. Both of the new prisoners, as we have seen, had been convicted of felonies. We have also seen that the two new prisoners had access to a gun—the record shows "approximately 13 rounds were sticking out of the butt of the pistol."

Although at that moment the officers had no direct knowledge that their prisoners' car contained the weapon just mentioned, nevertheless it developed in a moment that such was the fact. The ammunition which was noticed in the prisoners' car was the harbinger of the gun, as was denoted by the officer's utterance, "Where is the Luger?" A moment later

the gun came to light. It was directly under the driver's seat where, according to the evidence, a hand could reach it easily. Thus the felony of a convict possessing a pistol was being committed in the presence of the officers.

With promptness the officers arrested the two new prisoners, took note of the ammunition and discovered the gun. Thereupon the police car carrying the three prisoners, the gun and the ammunition, proceeded to the police station. Presently a towing agency removed the defendants' car from the street.

The trial judge sustained the reasonableness of the search above described with findings that we have quoted. Its reasonableness was sustained by the officers' knowledge of their prisoners and by the facts which they themselves observed before any search was undertaken.

We think that the search and the seizure were reasonable within the principles enunciated by *State v. Krogness,* 238 Or —, 388 P2d 120; *State v. Chinn,* 231 Or 259, 373 P2d 392; and *State v. Hoover,* 219 Or 288, 347 P2d 69.

We find no merit in the assignments of error.

The judgment of the circuit court is affirmed.