Howard E. Qoldflxjss, J.
The issues raised herein place into focus the conflict between the New York State rule which limits search incidental to a traffic violation arrest (People v. Marsh, 20 N Y 2d 98) and the Federal rule recently decided which permits full scale search under such circumstances (Gustafson v. Florida, 414 U. S. 260, and United States v. Robinson, 414 U. S. 218).
The defendant, by this motion, seeks to suppress the introduction of an alleged forged license in connection with the charge of violation of section 511 of the Vehicle and Traffic Law (driving with a suspended license), and section 170.25 of the Penal Law '(forgery). He also seeks to suppress a quantity of pills characterized as dangerous drugs in connection with the charge of section 220.05 of the Penal Law (possession of a controlled substance).
On August 2, 1973, at approximately 3:00 a.m. the defendant drove into a parking lot located at the Penn Central Station at Botanical 'Square in the County of Bronx. Two police officers in plainclothes were in the process of arresting another individual, one Alexander Homics, who was parked in the same lot. Homics was arrested for possession of a controlled substance.
The testimony at the hearing on the motion to suppress is contradictory. The two officers, Scanlon and Carrol, testified that Scanlon identified himself as a police officer and asked the defendant for his registration certificate. The officer indicated that he was suspicious of the defendant’s appearance at that particular time, stating that ‘ ‘ this was in a parking lot at that location, a deserted parking lot, and as I was making the first arrest, this defendant came upon the scene and I wanted to inquire as to who he was and why he was on the scene. ’ ’
At that point, he directed the defendant to show him his registration certificate, after identifying himself as a police officer. The defendant’s response, according to 'Scanlon, was to put the car into gear and try to leave the area. The other officer, Carrol, blocked his escape. The defendant was taken out of the car at gunpoint, in effect was arrested at that point, and a search revealed the alleged forged license and suspended license. Further search in the police station revealed the pills secreted *266 in the defendant’s underwear. The defendant Kelly and the witness Homics give a different version of the events. Homics says he had not yet been placed under arrest when the defendant Kelly arrived, although this did occur afterwards. He says the officers advanced on Kelly, guns drawn, and ordered him to stop. At that point Kelly denied that the police officers identified themselves, and that they asked him for his registration certificate, but that they pulled him from the car and searched him, and only identified themselves' after the arrest and the search. The defendant indicated that he did not know that they were police officers and that he ducked behind the wheel of the ear when he saw the guns. The defendant now challenges the validity of the arrest and the search incidental thereto, and moves that all evidence seized in connection with said arrest must be suppressed. He further contends that no probable cause, but only suspicion, was the basis of the search of the defendant. If this is so, then neither suspicion nor equivocal behavior, alone, could justify the search. (People v. Brown, 24 N Y 2d 421; People v. Corrado, 22 N Y 2d 308; Agnello v. United States, 269 U. S. 20; and Jones v. United States, 357 U. S. 493.) Moreover, a search is good or bad at the time it is commenced and search in violation of the Fourth Amendment is not validated by what it discloses. (Byars v. United States, 273 U. S. 28; United States v. Di Re, 332 U. S. 581 and Henry v. United States, 361 U. S. 98.)
On the other hand, if the People’s version of the events is believed, then the police officers had probable cause to arrest the defendant, because the defendant sought to leave the area after the policeman identified himself and demanded to see his license, something which he had the absolute authority to do and something the defendant had the absolute obligation to do, as mandated by section 401 (subd. 4) of the Vehicle and Traffic Law.
In determining motions of this nature, it is incumbent upon the court to make findings of fact when contradictory testimony is elicited. The question arises as to what quantum of proof are the People obliged to offer at a hearing for a motion to suppress. People v. Malinsky (15 N Y 2d 86, 91) holds that People are obliged to go forward in the first instance in sustaining legality of a search made without a warrant as incident to an arrest. Thereafter, the burden develops upon the defendant to show by a preponderance of credible evidence the absence of probable cause. (People v. Whitehurst, 25 N Y 2d 389; People v. Baldwin, 25 N Y 2d 66.)
*267 It would appear, therefore, that it is erroneous to place the onus of showing the legality of the search on the People. (People v. Merola, 30 A D 2d 963.)
If the testimony of either of the police officers were so incredible as to be unworthy of belief, then it would be fair to conclude that the People had not met their burden of going forward with their evidence. (People v. Berrios, 28 N Y 2d 361.) After reviewing the record of the hearing, this court does not come to that conclusion. Two witnesses for the People and two for the defendant give contradictory versions of the event. It cannot logically be stated that the police officers’ testimony and their recital of the events were incredible and unworthy of belief. The ensuing warrantless search and seizure of the license would be obnoxious under the Constitution if they were not justified by the existing exigent circumstances. (Chambers v. Maroney, 399 U. S. 42.)
The immediacy of the situation requiring a search was apparent, and the automobile exception to the Fourth Amendment was quite relevant herein because of the reasonable likelihood that the automobile was to be moved. (See Coolidge v. New Hampshire, 403 U. S. 443.)
But although the finding of this court is that the arrest was legal, the reason for so finding is that the basis for such arrest was the defendant’s refusal to display the license, upon demand, a violation of section 401 (subd. 4) of the Vehicle and Traffic Law. This section mandates the production of such license and such refusal created a situation where the police officer could reasonably place the defendant under arrest and search. It was a normal and reasonable consequence of the defendant’s actions.
What remains is the vital question concerning the suppression of the alleged narcotics found in the possession of the defendant in the stationhouse, after the original arrest (keeping in mind that the cause of arrest was a traffic violation). Such an arrest may not be used as a pretext to justify a search for evidence of a different offense or crime (United States v. Lefkowits, 285 U. S. 452; United States v. Tate, 209 F. Supp. 762), but no preconceived pretext is alleged by defendant nor does the evidence point in that direction.
The Court of Appeals, in People v. Marsh (20 N Y 2d 98, supra) decided that where there is an arrest for a traffic offense, the admissibility of the fruits of the ensuing search must be limited to evidence in connection with the purpose of the arrest. It cannot be said that the drugs found in the defend *268 ant’s possession in the stationhouse and not at the scene would fall under this limitation. The rule in Marsh has been reiterated by the Court of Appeals in People v. Coleman (24 N Y 2d 1005) and in People v. Adams (32 N Y 2d 451) where, as in this case, the original arrest resulted from an imperfection on the defendant’s license.
However, when the Supreme Court of the United States decided Gustafson v. Florida (414 U. S. 260, supra) and Umted States v. Robinson (414 U. S. 218, supra) they created the judicial dilemma we are faced with herein, because the Supreme Court held that a valid arrest provides sufficient basis for a thorough, full scale and unlimited search of the defendant, regardless of the grounds of the arrest. In the Robinson case, the police officer, after checking the defendant’s operator’s permit, arrested the defendant for driving while his license was revoked. The court stated that pursuant to this custodial arrest, the officer was authorized to make a full scale search of defendant’s person and the heroin discovered on his person was admissible in evidence. In Gustafson, defendant had no driver’s license in his possession — was arrested — and a pat down search revealed marijuana cigarettes, which were admitted into evidence.
The principle, as set down by the Supreme Court, is that the custodial arrest justifies a thorough search, not limited or confined by the fact that the arrest was based upon a traffic violation.
Is this court bound to enforce a decision by the Court of Appeals of the State of New York or is it obliged to follow this diametrically opposed ruling? Unquestionably, the decision herein must be based solely upon the Fourth Amendment of the United States Constitution. In this instance, it is the sole issue. Henry v. City of Rock Hill (376 U. S. 776) stands for the proposition that a rule stated in a decision by the Supreme Court of the United States and based upon the Federal Constitution is under the supremacy clause binding upon State courts as well as upon Federal courts.
However, in Cooper v. California (386 U. S. 58, 62), the Supreme Court states, “ Our holding, of course, does not affect the State’s power to impose higher standards on searches and seizures than required by the Federal Constitution, if it chooses to do so.” And in Sibron v. New York (392 U.S. 40, 60-61), a State “is * * * free to develop its own law of search and seizure to meet the needs of local law enforcement * * * and in the process it may call the standards it employs by any *269 names it may choose. It may not, however, authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which it attaches to such conduct.”
It appears, therefore, that the Court of Appeals may not narrow Fourth Amendment protections further than the Supreme Court dictates, but there is no prohibition against the State through its highest appellate court extending such protection. For these reasons, it is the opinion of this court that Marsh is not replaced by Gustafson and Robinson and is still the law in New York. The principle of Marsh is fair, reasonable, and equitable, and was consistent with Federal interpretation of the Fourth Amendment prior to Gustafson and Robinson. These latter cases take issue with Marsh on the theory that the privacy of interest guarded by the Fourth Amendment is subordinate to a “ legitimate and overriding governmental concern. ’ ’ Such a phrase has connotations which could erode Fourth Amendment protections and with very little imagination, could be the basis for the *1 ignoble shortcut to conviction” which Judge Clark abhorred in Mapp v. Ohio (367 U. S. 643).
The motion to suppress the dangerous drugs in connection with the charge of section 220.05 of the Penal Law is granted; the motion as to all other matters is, in all other respects, denied.