Argued May 8, reversed and remanded October 17, 1974

# STATE OF OREGON, *Petitioner, v.* DANIEL HAROLD FLORANCE, *Respondent.*

527 P2d 1202

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for petitioner. With him on the brief was Lee Johnson, Attorney General, Salem.

*J. Bradford Shiley, Jr.,* Portland, argued the cause and filed the brief for respondent.

TONGUE, J.

Defendant was convicted of the possession of drugs which had been taken from his billfold after his

arrest on another charge. A motion to suppress that evidence, based upon a claim of unlawful search and seizure, had been previously denied by the trial court. The Court of Appeals reversed the conviction, holding that it was error to deny that motion. 15 Or App 118, 515 P2d 195 (1973). We granted a petition for review by the state because the case presents serious questions relating to the nature and scope of the search of a person as an incident to an arrest, particularly as a result of the decision by the Supreme Court of the United States in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L ed 2d 427 (1973).

*The facts.*

Defendant was arrested on a farm near Estacada for menacing an officer with a pitchfork and for burglary. The arrest was held to be valid by the Court of Appeals and its validity is not an issue for the purpose of this review.[1] Immediately after the arrest, the officer "patted down" defendant for weapons and took from his pockets his billfold, among other things. The officer put the billfold and some other items in defendant's stocking cap and placed it on the hood of the police car. Defendant's mother then arrived and tried to take the cap and its contents, but the officer told her that "they had to stay there."

Defendant, together with the cap and its contents, was then taken by the officer to the Estacada City Hall, where the officer undertook to prepare a written "custody report" before taking defendant to the county jail at Oregon City. For the purpose of securing the information needed to prepare that report, including

---

[1] On the previous appeal by defendant to the Court of Appeals, however, it was contended by defendant that there was no probable cause for his arrest.

defendant's "true identity," the officer asked defendant for his middle name, date of birth, social security number and his correct address, among other things. Defendant had previously been read a "Miranda card" and refused to answer any of these questions.

It appears from a report prepared by the officer following a previous interview with defendant in the course of investigating the burglary of which defendant was a suspect that the officer already knew defendant's name and birthdate and also knew that he was then "staying" at a migrant workers camp at the farm where he was arrested. However, a different address for defendant appeared in that report, which was not offered in evidence.

The officer testified that when defendant refused to answer these questions he "supposed" that defendant "should have a driver license in his billfold," which he had previously taken from defendant's pocket. He also testified that "as soon as I opened it up I could see these plastic bags just inside the billfold" and "stuck in" or "tucked in a little pocket just inside the billfold."

The officer testified that he then asked defendant "if he was under medication of any kind"; that "he did not answer so I pulled it on out"; that there were five "little plastic bags," four of which contained a "white substance" and one a "blue substance." Tests were then made of these "powders" from which it appeared that they were "dangerous drugs." Based upon that evidence, defendant was convicted of possession of cocaine and other narcotic and dangerous drugs.

*Decisions by Oregon Court of Appeals and by United States Supreme Court.*

Under these facts the Oregon Court of Appeals

held that even if the seizure of defendant's billfold at the time of his arrest was valid, the subsequent search of the billfold and seizure of the plastic bags of drugs was invalid. In reaching that result a majority of that court held, among other things, that under the facts of this case and the previous decisions by this court the search of the billfold could not be justified as made for purposes of identification and was "too remote in time and place to be part of a search incident to arrest"; that the search was not made "as a part of an inventory during the booking process"; that even in such an inventory search it would not have been proper to search the contents of the billfold as a "closed container" and that, in any event, the police had no right to seize the drugs because there was no showing that they "had probable cause to believe the powdered substances were illegal drugs." See 15 Or App 118, 127-28, 515 P2d 195 (1973).[2]

Shortly after that decision by the Oregon Court of Appeals, the United States Supreme Court, in *United States v. Robinson, supra,* held that because a search incident to a lawful custodial arrest is a "traditional exception to the warrant requirement of the Fourth Amendment" of the Constitution of the United States, particularly when the search is made of a person, rather than of the area under his control, it follows that upon the making of a lawful custodial arrest a search of a person as an incident to the arrest

---

[2] There was also a dissenting opinion to the effect that for the purpose of preparing his "custody report" it was not unreasonable, as a part of "customary administrative booking-in procedures," for the officer to examine defendant's driver license in his billfold; that when he undertook to do so "the contraband was in plain view"; and that it was then the duty of the officer to have it "subjected to analysis." 15 Or App 118, 127-28, 515 P2d 195 (1973).

"requires no additional justification" and may include a "full search of the person" and the seizure of not only weapons, but drugs "as 'fruits, instrumentalities or contraband' probative of criminal conduct," despite the fact that the arrest was made on some other charge —in that case for "operating [an automobile] after revocation [of driver license] and obtaining a permit by misrepresentation."

To the same effect, see also the companion decision in *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 L ed 2d 456 (1973), and the subsequent decision in *United States v. Edwards,* 415 US 800, 807, 94 S Ct 1234, 1239, 39 L ed 2d 771, 778 (1974), in which the same rule was applied to a search of defendant's clothing made some time after an arrest and after the defendant was in jail, holding that such a search may be made, and without a warrant, "even though a substantial period of time had elapsed between the arrest" and the subsequent search.

More recently, in *State v. Williams,* 17 Or App 513, 522 P2d 1213 (1974), Chief Judge Schwab of the Oregon Court of Appeals, in a specially concurring opinion, discussed the differences and inconsistencies between what he referred to as the (new) "federal rule" and the "Oregon rule," as established by previous decisions of this court, and expressed the view that the Court of Appeals was bound by the decisions of this court, whether based upon an interpretation of Article I, § 9, of the Oregon Constitution or upon its own interpretation of the Fourth Amendment of the United States Constitution.[9]

---

[9] Article I, § 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

Under these circumstances it is appropriate for this court to restate the rules of law to be applied by the Oregon courts in cases involving the search of a *person* as an incident to a valid custodial arrest. Before undertaking to do so we would emphasize that this is not a case involving the search of a house, automobile, or other *place* within the control of a defendant at the time of his arrest and as an incident to the arrest. See *State v. Goldstein et al,* 111 Or 221, 224-25, 224 P 1087 (1924). See also *State v. Krogness,* 238 Or 135, 146, 388 P2d 120 (1964), cert denied, 377 US 992, 84 S Ct 1919, 12 L ed 2d 1045 (1964).

*Prior decisions by this court.*

■ Fundamentally, of course, the question to be decided in each case is whether the search and seizure was unreasonable. That determination involves a balancing of the right of privacy of an individual against the needs of the state. *State v. Douglas,* 260 Or 60, 67, 488 P2d 1366 (1971), cert denied, 406 US 974, 92 S Ct 2420, 32 L ed 2d 674 (1972). We have also held that whether a search was reasonable depends upon the facts and circumstances of each case. *State v. McCoy,* 249 Or 160, 163, 437 P2d 734 (1968).

■ A search and seizure without a warrant is "per se" unreasonable, as a general rule, subject to

search, *or* seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.—" (Emphasis added)

Amendment IV of the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches *and* seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added)

some exceptions. One of the recognized exceptions to the warrant requirement is that when arrested, a person can be searched as an incident to that arrest. *State v. Chinn,* 231 Or 259, 266, 373 P2d 392 (1962).

Despite decisions by the Supreme Court of the United States strictly construing the Fourth Amendment of the Constitution of the United States with reference to searches of places in the control of defendants at the time of their arrest and despite decisions by this court to the same effect, this court has frequently sustained searches of arrested persons.

The seizure of letters and other documents found on the persons of defendants at the time of their arrest was sustained in early decisions by this court. *State v. Frank E. McDaniel,* 39 Or 161, 169-70, 65 P 520 (1901); *State v. Wilkins,* 72 Or 77, 80, 142 P 589 (1914); and *State v. Duffy et al,* 135 Or 290, 306-07, 295 P 953 (1931). See also *State v. Ware,* 79 Or 367, 373, 154 P 905, 155 P 364 (1916); and *State v. Laundy,* 103 Or 443, 494, 496, 204 P 958, 206 P 290 (1922).

Similarly, the seizure of whiskey, drugs, guns or other contraband found on the persons of defendants at the time of their arrest has been sustained. *State v. F. A. McDaniel,* 115 Or 187, 231 P 965, 237 P 373 (1925); *State v. Hayes,* 119 Or 554, 556, 249 P 637 (1926); *State v. Dempster,* 248 Or 404, 407-08, 434 P2d 746 (1967). See also *State v. James Johnson,* 232 Or 118, 122, 374 P2d 481 (1962), and *State v. Roderick Delano Johnson,* 249 Or 55, 56, 437 P2d 110 (1968). But see *State v. Elkins,* 245 Or 279, 283, 422 P2d 250 (1966).

The court has also sustained the involuntary taking for examination and tests of the clothing of a

previously arrested person or a sample of blood from his body—a search and seizure far more drastic than the taking of the contents of his wallet or billfold. *State v. Cram,* 176 Or 577, 582, 160 P2d 283 (1945); *State v. Tracy,* 246 Or 349, 359-61, 425 P2d 171 (1967); and *State v. Whitewater,* 251 Or 304, 307, 445 P2d 594 (1968).④

Thus, it is not surprising that this court has previously sustained the right of police officers to search the contents of the purse, wallet or billfold of an arrested person, as in this case. *State v. Broadhurst,* 184 Or 178, 251, 196 P2d 407 (1948). But see *State v. O'Neal,* 251 Or 163, 166, 444 P2d 951 (1968).

In several of these cases, as in this case, the articles seized from the persons of arrested defendants were offered in evidence to sustain charges of crimes different from the crimes for which such persons were arrested, particularly when such articles constituted drugs or other contraband. *State v. Hayes, supra; State v. Dempster, supra;* and *State v. Whitewater, supra.* See also ORS 133.535. To the same effect, see *State v. Christensen,* 151 Or 529, 534, 51 P2d 835 (1935); *State v. James Johnson, supra; State v. Turner,* 237 Or 609, 390 P2d 177 (1964); and *State v. Krogness, supra.* But see *State v. Elkins, supra,* and *State v. O'Neal, supra* at 166. See also *State v. McCoy, supra* at 163; *State v. Chinn, supra* at 274-278; and Note, 43 Or L Rev 333 (1964).

---

④ See also State v. Murphy, 2 Or App 251, 258, 465 P2d 900, *cert denied,* 400 US 944, 91 S Ct 246, 27 L ed 2d 248 (1970). Habeas corpus granted in Murphy v. Cupp, 461 F2d 1006 (9th Cir 1972), *rev'd,* 412 US 291, 93 S Ct 2000, 36 L ed 2d 900 (1973), involving the taking of fingernail scrapings. But see State v. Stover, 14 Or App 559, 513 P2d 537 (1973), *rev granted,* July 30, 1974.

Although no specific reference was made to Article I, § 9, of the Oregon Constitution in some of these cases, the searches and seizures were sustained in several of these cases by opinions in which specific reference was made to Article I, § 9. *State v. Laundy, supra* at 494; *State v. F. A. McDaniel, supra* at 193 and 218; and *State v. Duffy, supra* at 297. See also *State v. Chinn, supra,* 265, 296; *State v. Krogness, supra* at 142; and *State v. Elkins, supra* at 282.

█ Various tests have been applied by this court in considering the validity of searches of the persons of arrested defendants, including the nature and scope of such searches. The general test, as stated in some of our more recent decisions, although in cases involving searches of automobiles, rather than of persons, is that "the search must be reasonably related to the offense which prompts the arrest." *State v. Krogness, supra* at 144, and *State v. Cloman,* 254 Or 1, 15, 456 P2d 67 (1969). See also *State v. O'Neal, supra* at 166 and *State v. Chinn, supra* at 267.⑨

---

⑨ Other "tests," usually stated in terms of the permissible scope or intensity of a search and the nature of the items which may be properly seized as an incident to a valid arrest, including the following:

(1) The police may make "the search that is usually made of arrested persons," State v. Frank E. McDaniel, 39 Or 161, 170, 65 P 520, 523 (1901).

(2) The police may seize the "fruits" or "instruments" of a crime or "proof relating to the transaction," including "articles of evidentiary value," State v. Laundy, 103 Or 443, 496, 204 P 958, 206 P 290 (1922). See also State v. Cram, 176 Or 577, 582, 160 P2d 283 (1945); State v. Elkins, 245 Or 279, 284, 422 P2d 250 (1966); State v. Tracy, 246 Or 349, 360, 425 P2d 171 (1967); and State v. McCoy, 249 Or 160, 163, 437 P2d 734 (1968). But see State v. Chinn, 231 Or 259, 266-67, 373 P2d 392 (1962), and State v. Cloman, 254 Or 1, 13, 456 P2d 67 (1969).

(3) The police may seize the "instrumentality with which the crime was "committed" and also "all contraband properties for

*Rule of United States v. Robinson adopted.*

The Supreme Court of the United States in *United States v. Robinson, supra,* after review of its previous decision, concluded as follows (414 US at 235, 945 S Ct at 477, 38 L ed 2d at 440-41 (1973)):

> "* * * A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A

the purpose of confiscation," State v. Duffy et al, 135 Or 290, 298, 295 P 953, 956 (1931). See also State v. Goldstein et al, 111 Or 221, 224-25, 224 P 1087 (1924); State v. James Johnson, 232 Or 118, 122, 374 P2d 481 (1962); State v. Krogness, 238 Or 135, 145, 388 P2d 120 (1964); State v. Chinn, *supra* at 267; State v. Elkins, *supra* at 283, 288; and State v. Dempster, 248 Or 404, 434 P2d 746 (1967).

For purposes of comparison, ORS 133.535, enacted in 1973 (Oregon Laws 1973, ch 836, § 82) relating to "Permissible objects of search and seizure" upon the issuance of search warrants, provides as follows:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

See discussion in State v. Chinn, *supra,* 266-278, and dissenting opinion by O'Connell, J. See also Note, 43 Or L Rev 333 (1964), and Platt, A Legislative Statement of Warrantless Search Law, 52 Or L Rev 139 (1973).

custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

This is contrary to this court's understanding of previous decisions by the United States Supreme Court interpreting the Fourth Amendment. We had been of the opinion that "a search incident to arrest is justified only for the safety of the arresting officer or because it has relevance to the crime for which the accused is arrested." *State v. O'Neal, supra* at 165.

If we choose we can continue to apply this interpretation. We can do so by interpreting Article I, § 9, of the Oregon constitutional prohibition of unreasonable searches and seizures as being more restrictive than the Fourth Amendment of the federal constitution.[9] Or we can interpret the Fourth Amendment more restrictively than interpreted by the United States Supreme Court.

■ After attempting to weigh the various conflicting considerations, we have come to the conclusion that we should recognize and adopt the rule as stated by the Supreme Court of the United States in *United States v. Robinson, supra.* In so holding, this court is not insensitive to criticisms of the rule of *Robinson,* as stated by the dissenting opinion in this case. See also Note, 8 USF L Rev 777 (1974) ; Comment, 23 Cleve St L Rev 135 (1974) ; Note, 4 Memphis St L Rev 530

---

[9] See note 3, *supra.*

(1974); Note, 7 Akron L Rev 499 (1974); Comment, 1 Hastings Con L Q 179 (1974); Note, 25 Mercer L Rev 943 (1974); Note, 45 Miss L J 800 (1974); Note, 35 U Pitt L Rev 864 (1974); and Comment, 3 U San Fern Valley L Rev 113 (1974). But see Note, 19 SD L Rev 494 (1974).

■ Indeed, the views of this court have in some respects been contrary to those expressed in *Robinson,* as indicated by its past decisions. However, we have previously stated in *State v. Cloman, supra* at 15, consistent with the rule of *Robinson,* that: "The searched person's privacy has already been partially invaded by the arrest; therefore, the search does not have the personal impact that it otherwise might have."

■ There are good reasons why state courts should follow the decisions of the Supreme Court of the United States on questions affecting the Constitution of the United States and the rights of citizens under the provisions of that Constitution, as well as under identical or almost identical provisions of state constitutions,[7] as in this case. See *State v. Matthews,* 216 NW2d 90, 105 (ND 1974), Erickstad, C. J., concurring specially. See also *People v. Norman,* 112 Cal Rptr 43, 49-50 (Cal App 1974), and *People v. Cannon,* 310 NE2d 673, 676, 18 Ill App 3d 781 (1974). Cf. *State v. F. A. McDaniel, supra* at 216.

■ The law of search and seizure is badly in need of simplification for law enforcement personnel, lawyers and judges, provided, of course, that this may be done in such a manner as not to violate the constitutional rights of the individual. The rationale of the rule excluding illegally obtained evidence in state court

---

[7] See note 3, *supra.*

proceedings, as established by the Supreme Court of the United States in *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L ed 2d 1081 (1961), is that such a rule will act as a deterrent upon illegal searches by law officers.

■ It is true that this "exclusionary" rule has been criticized, including the underlying assumption that it acts as such a deterrent. See authorities cited in *State v. Valentine/Darroch,* 264 Or 54, 67, 504 P2d 84 (1972); Levin, An Alternative to the Exclusionary Rule for Fourth Amendment Violations, 58 Jud No. 2, 75 (Aug. 1974), and authorities cited therein. See also Sevilla, The Exclusionary Rule and Police Perjury, 11 San Diego L Rev 839 (1974); Note, 8 USF L Rev, *supra* at 780; and Comment, 1 Hastings Con L Q, *supra* at 179. While this rule is in effect, however, and in order that it may have such a deterrent effect it is important, for the guidance of law officers, that the rule be as clear and simple as may be reasonably possible, consistent with the constitutional rights of the individual.

The rule stated in *United States v. Robinson, supra,* is a simplification. Not adopting the rule of *Robinson* would add further confusion in that there would then be an "Oregon rule" and a "federal rule." Federal and state law officers frequently work together and in many instances do not know whether their efforts will result in a federal or a state prosecution or both. In these instances two different rules would cause confusion.

For these reasons, we overrule our previous decision in *State v. O'Neal, supra,* and other previous decisions to the same effect to the extent that they are contrary to the rule which we now adopt. This is consistent with the views of most of the state courts

which have as of this date considered the rule of *Robinson*. Most of such courts quote that rule or cite that decision with apparent approval. See *State v. Mabra,* 61 Wis 2d 613, 213 NW2d 545, 550-51 (1974); *People v. Moore,* 391 Mich 426, 216 NW2d 770, 774-75 (1974); *People v. Stergowski,* 391 Mich 714, 219 NW2d 68, 74 (1974); *Frasier v. State,* — Ind ——, 312 NE2d 77, 80 (1974); *State v. Woods,* — W Va ——, 206 SE2d 509, 512 (1974); *State v. Turner,* — Mont ——, 523 P2d 1386 (1974); *People v. Norman, supra* at 46-50; *People v. Cannon, supra* at 676; *State v. Vigil,* 86 NM 388, 524 P2d 1004, 1007 (1974); *Kansas City v. Butters,* 507 SW2d 49, 53 (Mo App 1974); and *State v. Hall,* 508 SW2d 200, 205 (Mo App 1974). See also *Howell v. State,* 271 Md 378, 318 A2d 189, 191 (1974); *Hardy v. United States,* 316 A2d 867, 869 (DC App 1974); and *State v. Schofield,* — NH ——, 322 A2d 603, 604 (1974).

To date, and to the best we can ascertain, only the Supreme Court of Hawaii and a New York City court appear to have opted for a more restrictive rule. *State v. Kaluna* 55 Hawaii 361, 520 P2d 51, 58 (1974), and *People v. Kelly,* 77 Misc 2d 264, 353 NYS2d 111, 117 (1974).

■ The Court of Appeals held in this case (15 Or App 118) that upon the arrest of this defendant the officer was entitled to search his person only for weapons and for evidence relevant to the crime for which defendant was arrested. We hold, however, that under the *Robinson* rule the items which may properly be seized upon the making of a search as an incident to a lawful custodial arrest include not only weapons and other articles which may be used to either threaten the life of the arresting officer or to effect an escape,

and "instrumentalities" of the crime for which the person was arrested and evidence of that crime, but also contraband evidence of other crimes. Indeed, this is consistent with most of the past decisions by this court, as previously noted.

As held by the Wisconsin court in *State v. Mabra, supra* (213 NW2d at 550):

> "* * * [W]hen an article properly comes into an officer's possession in the course of a lawful search, it would be entirely without reason to say he must return it because it was not one of the things it was his business to look for. * * *"

We need not decide in this case, however, whether noncontraband evidence of other crimes may also be seized during such a search because that issue is not presented for decision in this case. Neither was that question presented for decision in *Robinson*.

█ In adopting the rule of *Robinson,* however, we wish to make it clear that we do not foreclose the future recognition of possible exceptions or qualifications to this general rule. Indeed, it would be surprising if the Supreme Court of the United States, having embarked upon a new course with the adoption of the rule as stated in *Robinson,* does not in the future recognize at least some exceptions or qualifications to that rule, as it has in the past with reference to other rules adopted by it in the area of constitutional law.

It is expressly recognized in *Robinson* (38 L ed 2d at 441) that the search of an arrested person may be unlawful if such a search "partook" of "the extreme or patently abusive characteristics which were held to violate the Due Process Clause of the Fourteenth Amendment" in *Rochin v. California,* 342 US 165, 72 S Ct 205, 96 L ed 183 (1952). To the same effect,

it was observed by SCHWAB, C. J., concurring in *State v. Williams, supra* (17 Or App 519), in commenting upon the results of an otherwise strict and literal application of the rule of *Robinson:*

"* * * With no motivation other than curiosity, or the awareness that if a person shucks enough oysters he will eventually find a pearl, the police could read through intensely personal items the arrestee had been carrying, such as a diary. The unlimited intensity of a search incident to arrest would presumably authorize routine body cavity searches. * * *"

It also appears from the concurring opinion of Stewart, J., in the companion case of *Gustafson v. Florida, supra* (38 L ed 2d at 462), that a different result might well also follow if such a search were made after a so-called "pretext arrest" for the violation of a minor traffic ordinance. Concern over possible abuses by application of the *Robinson* rule to "pretext arrests" is also expressed by the dissenting opinion in this case.

In addition, and as pointed out by the Michigan court in its discussion of *Robinson* in *People v. Moore, supra* at 774, Justice Rehnquist (the author of *Robinson*) said in an earlier case that "The ultimate standard set forth in the Fourth Amendment is reasonableness," *Cady v. Dombrowski,* 413 US 433, 439, 93 S Ct 2523, 37 L ed 2d 706, 713 (1973). Thus, the Michigan court in *Moore,* after quoting the rule of *Robinson* with apparent approval, then proceeded to consider whether the search of the arrested person was "reasonable" under the facts of that case. To the same effect, see also *People v. Stergowski, supra* at 75; *State v. Turner, supra* at 1387; *State v. Vigil, supra* at 1007. And see *State v. Kaluna, supra* at 57-60.

■ This is consistent with the suggestion that the primary effect of the *Robinson* rule is to shift the burden of proving the reasonableness of a search by an officer as an incident to a lawful custodial arrest by according to the officer a presumption that he has acted reasonably in the performance of his official duties and by requiring a showing by the defendant that the search was unreasonable or that the arrest itself was "pretextual" or without probable cause. See Comment, 23 Cleve St L Rev, *supra* at 146. See also, Note, 35 U Pitt L Rev, *supra* at 881. Cf. *State v. Krogness, supra* at 144, 147.

■ We do not sanction either the abuses condemned by *Rochin* or "pretext" arrests. Regardless of the rule of *Robinson,* there must be probable cause for an arrest. See *State v. Mabra, supra* at 551; *Kansas City v. Butters, supra* at 53-55; and *State v. Hall, supra* at 205-06.´ See also Note, 23 Cleve St L Rev, *supra,* at 149-50. There may also be other circumstances under which a search made by an arresting officer may be illegal, even though made as an incident to a lawful custodial arrest. These possibilities, however, including the possibility that some police officers, by "pretext" arrests or arrests without probable cause, may abuse their sworn duty to obey the law, as well as to enforce it, do not in our opinion provide valid reasons why this court should not at this time recognize and adopt the rule of *Robinson.* See *State v. Valentine/ Darroch, supra* at 67.

*The search and seizure in this case was not unreasonable.*

A. *Search of wallet.*

Upon application of this rule to the facts of this case we hold that the search made as an incident to

the custodial arrest of defendant was a reasonable search.

Defendant was not arrested for a minor traffic offense. For the purpose of this appeal we must assume that he was legally arrested for "menacing" an officer with a pitchfork, if not also for burglary. Regardless of whether the officer may have had some previous information relating to the identity of this defendant, including his name, address and date of birth, when a person is arrested for crimes of such a nature and seriousness, we believe that it is reasonable upon the making of such an arrest for the arresting officer to verify any information that he may already have relating to the identity of the arrested person. In addition, it does not appear that the officer had that report with him or that he then remembered its contents.

17. Thus, we hold that for the purpose of determining or verifying the true identity of a person taken into custody following an arrest for such a serious offense it is not unreasonable for an officer to take the billfold or wallet of a person arrested for such a crime and to search it for a driver license, credit cards or other evidence of the true identity of the person arrested. Accordingly, and contrary to the decision by the Court of Appeals, we hold that under the facts of this case it was not unreasonable for the officer to take defendant's billfold and to open it for the purpose of looking for defendant's driver license, as testified by the officer.[9]

---

[9] State v. O'Neal, 251 Or 163, 444 P2d 951 (1968), involved different facts in that the officer in that case arrested the defendant for a minor traffic offense, searched through defendant's wallet and found a folded piece of paper which he unfolded, and

We do not decide in this case whether an officer who makes an arrest of a person for a minor offense, such as a minor traffic violation, and asks for and is given the driver license of such a person, may then make a similar search of his billfold or wallet. Also, that question was not presented for decision in *Robinson.*

And regardless of the broad language used by the court in *Robinson,* it is not necessary for this court in this case to decide the extent to which the officer could have searched through defendant's billfold in this case because, according to the testimony, as soon as the officer opened the billfold the small plastic bags containing the drugs were then in plain view. *State v. Elk,* 249 Or 614, 622-23, 439 P2d 1011 (1968). Cf. *State v. Krogness, supra* at 145; *State v. Roderick Delano Johnson, supra* at 56; and *State v. Keller,* 265 Or 622, 625, 510 P2d 568 (1973).

B. *Seizure of drugs.*

■ The Court of Appeals held in this case that even assuming that the officer could properly search defendant's billfold for the purpose of verifying defendant's identity and even though the plastic bags were in plain view, nevertheless, under the rule of *State v. Elkins, supra,* the officer had no good reason to suspect that the plastic bags contained narcotics so as to justify the submission of them to a laboratory for testing.

In our opinion, that view is simply not realistic. This officer was experienced in such matters and upon

only then discovered a half-smoked marijuana cigarette. That case is overruled, however, to the extent that it is contrary to our holding in this case.

finding these plastic bags containing white and blue powdered substances he was entitled to use common sense. Indeed, it is the business of police officers to be suspicious and this officer had not only the right, but the duty to determine whether or not such powdered substances constituted illegal drugs. This was not a case involving a bottle of pills, as in *State v. Elkins, supra,* and the rule as stated in that case (at 290-91) is not contrary to this conclusion, but supports it.[9] See also *State v. James Johnson, supra* at 122.

### C. *Time and place of search and seizure.*

 It was also held by the Court of Appeals that even though such a search may have been reasonable if made at the time and place of defendant's arrest, the search in this case was not reasonable because it was "too remote in time and place to be a part of a search incident to arrest." We hold, however, that upon the taking into custody of a person following a legal arrest, such a search of the person arrested as would be reasonable if made by the officer at that time and place may be made by him at any time in the course

---

[9] The dissent is critical of these statements as not explaining "why the contents of an unlabeled bottle containing drugs cannot be seized [as held in State v. Elkins, *supra*], but an unlabeled plastic container containing drugs can be seized."

In *Elkins,* we said (at 290-91):

"It should not be forgotten that it is the duty of police officers to ferret out crime. It is their business to be suspicious and they are trained in the ways of the unlawful. Therefore reasonable grounds for a police officer to believe that he may have come upon implements or fruits of a crime other than that for which the arrest was made may be furnished by something that might be of relative insignificance to a layman. However, a balance must be struck between the protection of the public and the rights of the individual. Violation of property rights is generally considered by our society not to be of as great consequence or importance as violation of the person. Therefore, there may be a legitimate basis for contending that

of transporting the arrested person to jail. The fact that in this case the officer stopped at Estacada to prepare his "custody report" before proceeding to the jail at Oregon City did not invalidate the search. In our opinion, the search in this case was reasonable in relation to the time and place of the arrest, within the rule as stated in *State v. Chinn, supra* at 267, 270-72. See also *United States v. Edwards, supra,* and La Fave, Search and Seizure: The Course of the True Law, 1966 Ill Law Forum 255, 304.

In so holding we do not undertake to decide the nature, scope and intensity of the search that may reasonably be made of an arrested person at the time of the booking of such a person for jail, including the extent to which an inventory may be made of the contents of his billfold or wallet or of other articles in his possession and these questions were not presented for decision in *Robinson.* Cf. *State v. Tracy,*

---

a lesser showing satisfies the constitutional criterion of reasonableness when only property rights are involved and rights of privacy have already been violated by lawful arrest. However, we believe the balance between the public and the individual requires some protection for individual property rights by way of at least a minimal factual basis for the officer's suspicion and resultant seizure of property unrelated to the crime for which the arrest is made. * * *"

In the striking of such a balance we held in *Elkins,* in effect, that it was an unreasonable search, under the facts of that case, for an arresting officer who found an unlabeled bottle containing three kinds of capsules and pills to seize them and have them analyzed, considering the fact of common knowledge that it is not uncommon to carry ordinary pills in a pill bottle and that pills in a pill bottle may or may not contain illegal drugs. In striking such a balance in this case, however, we hold that it was not unreasonable for an arresting officer experienced in such matters who found plastic bags containing powdered substances to seize them and have the contents analyzed, considering the fact of common knowledge that illegal drugs are often carried today in the form of powder in plastic bags and that legal drugs are almost never carried that way.

*supra; State v. Dempster, supra; State v. McCoy, supra; State v. Whitewater, supra;* and *State v. Keller, supra.* See also ORS 133.455 (formerly ORS 142.210).

■ For all of these reasons, we hold that the search of this defendant and the seizure of the drugs found in the course of that search were not unreasonable; that the trial court properly denied defendant's motion to suppress the drugs taken from him at that time; that such evidence was properly received during the course of the trial; that defendant was properly convicted, and that the conviction should not have been reversed by the Court of Appeals, but should be reinstated.

Reversed and remanded.

O'CONNELL, C. J., dissenting.

Our action today in adopting the principle laid down in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed2d 427 (1973), repudiates our previous cases holding that a warrantless search is invalid unless it can be shown that the search was necessary for the protection of the arresting officer or to avoid the loss of evidence.

Although the majority recognizes that we are free to continue to provide a greater measure of protection to our citizens under Article I, § 9 of our own constitution than is now provided under the Fourth Amendment as a result of *Robinson,* the majority now elects to dilute the safeguards which we previously found in our constitution.

The reasons advanced by the majority for making this important shift in our interpretation of Art. I, § 9 are not convincing. The principal reason seems

to be that the new rule will simplify the law of search and seizure in Oregon. This will be brought about, according to the majority opinion, because there will no longer be an "Oregon rule" and a "federal rule," which it is said is confusing when federal and state officers work together.

Whether any substantial amount of confusion arises out of this circumstance, I am not prepared to say because I have no information on the subject and I suspect that the majority is in no better position than I to make an appraisal of the situation.[1] But assuming that there is some confusion, it strikes me as a slender reed upon which to rest a repudiation of a significant part of an important constitutional doctrine, guaranteeing the basic right of privacy. Although simplicity of rules is desirable, it is not the principal objective we should have before us in formulating constitutional doctrine. In numerous instances we have found it necessary to fashion complex rules simply because we are dealing with complex interests.

Certainly, simple rules can be devised to make the First Amendment or the Fourteenth Amendment easily applied. And so with the applicability of the Fourth Amendment and Art. I, § 9. But in applying these constitutional provisions we are dealing with some of the most fragile of our civil liberties, the pro-

---

[1] As a logical matter, it is hard to conceive of how the presence of a stricter Oregon view would be confusing. Since evidence seized in violation of our constitution would be inadmissible in our state courts, Oregon police need recognize only the stricter Oregon rule. It should be noted that the federal and state rules governing police conduct have always differed in significant ways. *See e.g.*, Mallory v. United States, 354 US 449, 77 S Ct 1356, 1 L Ed2d 1479 (1957); McNabb v. United States, 318 US 332, 63 S Ct 608, 87 L Ed 819 (1943). Confusion of the police has not been considered a major criticism of such differences.

tection of which requires keen judicial sensitivity not only to the interests of the accused but also the dangers of unfettered inquiry by agents of government into the citizen's private affairs. We should work in this field in the manner of a surgeon with the delicate instruments of surgery and not as the *Robinson* rule permits, in the manner of a butcher wielding a meat axe.

The price we pay for the majority's quest for "simplicity" is massive erosion of the warrant requirement of our constitutions. It is not to be forgotten that the Fourth Amendment through the requirement of a warrant was designed to interpose a judicial officer between the citizen and the agent of government so that on an ad hoc basis the grounds for the search could be judicially scrutinized for probable cause, and for the specificity of the place to be searched and the person or thing to be seized.[2] With the latitude now permitted by the *Robinson* rule, there will be no opportunity for judicial supervision of any search incident to a so-called "custodial arrest." And, although the majority opinion in the present case deems it important to emphasize that we are dealing with the search of a *person* and not the search of a *place,* it will take something close to legal legerdemain to explain why the custody of a person permits an unlimited search of that person but that the custody of a box[3] or an automobile[4] does not permit the unlimited search

[2] Johnson v. United States, 333 US 10, 13-14, 68 S Ct 367, 369, 92 L Ed 436 (1948). *Compare* United States v. Robinson, 414 US 218, 235, 94 S Ct 467, 477, 38 L Ed2d 427 at 440-441 (1973) (quoted by the majority at page 10). *See* United States v. Robinson, 414 US 218, 238, 94 S Ct 467, 477, 38 L Ed2d 427, 442 (1973) Marshall, J., dissenting.

[3] As in State v. Keller, 265 Or 622, 510 P2d 568 (1973).

[4] As in State v. Krogness, 238 Or 135, 145, 388 P2d 120 (1964).

of those objects. It will be almost as difficult to explain, on the reasoning used in *Robinson,* why there should be any limits in the search of a house once the police are lawfully on the premises.

If, then, these are the necessary logical extensions of *Robinson,* what has happened to the warrant requirement and the protection that it provides the citizen?

Even if it were conceded that the *Robinson* rule may simplify the law of search and seizure in some respects, it also complicates it in other, and more important respects. The majority opinion itself, in embracing the "simple" rule of *Robinson,* lists a number of possible limiting exceptions and suggests the likelihood of others, all of which would require the same kind of line-drawing and the same kind of complexity involved in the pre-*Robinson* rule which we are now discarding.[5]

The majority opinion offers us the solace that the *Robinson* rule of limitless search can be held within acceptable bounds by invalidating searches following a so-called "pretext arrest." We are not told what constitutes a "pretext arrest." Where the defendant is arrested for the violation of a traffic law (as in *Robinson* and *Gustafson*), is the arrest a pretext if the officer also has the suspicion, but not probable cause, to believe that the defendant also has drugs in his possession? If the answer is no, we have, then, the almost unlimited license to make warrantless searches.[6] If

[5] The confusion of the police feared by the majority seems at least as likely to result from adopting a new rule with unknown limits as from maintenance of a separate but consistent state rule.

[6] State v. Kaluna, 55 Haw 361, 520 P2d 51, 59 (1974). Comment, 3 U of San Fernando Valley L Rev 113, 116, 123 (1974).

the answer is yes, the license will be almost as broad because it will be next to impossible to determine that in making the arrest the police were motivated by the desire to search for evidence of a crime not related to the arrest.[*] Moreover, the difficulty of deciding whether or not the arrest was a pretext creates the same kind of complexities the majority seeks to avoid by the adoption of *Robinson*.

The majority also suggests another limitation on the right to search under the *Robinson* rule, where the search partakes of "the extreme or patently abusive characteristics which were held to violate the Due Process Clause of the Fourteenth Amendment in *Rochin v. California,* 342 US 165, 72 S Ct 205, 96 L Ed 183, 25 ALR2d 1396 (1952)" (*United States v. Robinson, supra* 38 L Ed2d at 441). We will be called upon to decide on a case by case basis what kind of searches fall within this exception. It is not uncommon in the drug world for persons apprehended by the police to secrete drugs in anal or vaginal orifices. Could the police validly extend their search into these orifices as an incident to an arrest for a traffic violation? The search would not seem to be "extreme or patently abusive" if it was made in a neighborhood where the possession of drugs was common and the likelihood of secreting drugs within the body was not uncommon. On the other hand, if the search were made in circumstances where there would be little likelihood of such a method of concealment, the search would, I should think, be "extreme" and "patently abusive." By this approach we find ourselves in the position, then, of testing the validity of the search upon the basis of probable cause to search and we are, in effect, back

---

[*] Note, 1959 Wis L Rev 347, 353 (1959). *See,* La Fave, Arrest, at 151 (1965).

where we started, using the same rule as we now say we have discarded.

The majority opinion adds further confusion by making a distinction between a search *to establish identity* and a search for other purposes. The court then couples this with a distinction between an arrest for a *major* offense and an arrest for a *minor* offense "such as a minor traffic violation" and concludes that a search through the defendant's wallet to determine or verify the identity of one arrested for a major offense is valid, but that we need not decide whether the same would be true where the arrest is made for a minor offense and the officer "asks for and is given the driver's license of such a person." It is not clear what the court is saying. Does it mean that the process of going through an arrested person's belongings to ascertain his identity is not a "search" and is always valid, but that the search for evidence of a crime is subject to limitations of some kind? Or does it mean that checking a man's identity is a "search," but there is a possible difference between a search incident to a major offense and a search incident to a minor offense? If the former meaning is intended, I would disagree on the ground that a citizen is entitled to have his privacy protected from police intrusion whether the purpose is to obtain information as to the citizen's identity or to obtain information about the commission of a crime. Precisely the same dangers seen as the basis for the adoption of the Fourth Amendment apply in both cases.

If the court is purporting to make a distinction between major and minor offenses for the purpose of setting different limits of search, the reasoning would be unsound because, whether a person is under custodial arrest for a major or minor offense, his privacy

has been invaded equally and, accepting the rationale of *Robinson,* privacy having been forfeited there is no reason for giving it life at any stage in the process of police investigation.

In addition to this logical difficulty which the majority has created, there is a more serious transgression in accepting the reasoning which constitutes the major premise of *Robinson.* As noted above, *Robinson* reasons that once the police have lawfully intruded upon the defendant's privacy, it is gone for all other purposes thereafter in the course of the search. We are not told why this is so. Certainly, it is not because the accused can be deemed to have consented to a more pervasive invasion of his privacy. And I can think of no moral precept which would prompt one to say that a man who is bad because he drives without a driver's license should be penalized by being made to strip down for a search. I think it is apparent that the real reason for the forfeiture rationale of *Robinson* is that the U. S. Supreme Court feels that the police need more effective tools to aid them in law enforcement.

I am in favor of giving the police all the proper means of carrying out their important and dangerous job, but I would draw the line at the point where it gives rise to the danger which the Fourth Amendment was designed to protect us against which, I repeat, is the danger of the abuse of power by the executive branch of government acting through its enforcement agencies. In view of recent events demonstrating how these agencies can imperil our interests, it is surprising to me that we would, by the adoption of the *Robinson* rule, weaken the very safeguards designed for our protection.