**Wayne ACTON and Judy Acton, guardians ad litem for James Acton, Plaintiffs–Appellants,**

v.

**VERNONIA SCHOOL DISTRICT 47J, Defendant–Appellee.**

No. 92–35520.

United States Court of Appeals, Ninth Circuit.

Sept. 15, 1995.

Thomas M. Christ, Mitchell, Lang and Smith, Portland, OR, for plaintiffs-appellants.

Timothy R. Volpert, Shelley M. Larkins, John A. Matterazzo, Davis Wright Tremaine, Portland, OR, for defendant-appellee.

Before: REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.

Opinion by Judge FERNANDEZ; Dissent by Judge REINHARDT.

FERNANDEZ, Circuit Judge:

Pursuant to the United States Supreme Court's decision in *Vernonia School District v. Acton,* —— U.S. ——, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), and because we are of the opinion that the Oregon Supreme Court would not offer greater protection under the provisions of the Oregon Constitution in this case,[1] we affirm the judgment of the district court.

AFFIRMED.

1. We deny the request to certify this question to the Oregon Supreme Court.

1. Article I, Section 9 of the Oregon Constitution provides:
   No law shall violate the right of the people to be secure in their persons, houses, papers, and

REINHARDT, Circuit Judge, dissenting:

I strongly disagree with the majority's refusal to allow the Oregon Supreme Court to determine whether the School District's random drug testing program violates the Oregon Constitution. The majority's inexplicable unwillingness to certify the question and its rash, peremptory conclusion that the Oregon Constitution affords no greater protection than does the Fourth Amendment (as it has recently been construed in this case) stands in direct contradiction to our prior opinion—more specifically, to the part that was *not* overruled by the Supreme Court.

In our earlier opinion, we concluded that random, suspicionless drug testing of student athletes violated both the Fourth Amendment of the U.S. Constitution and Article I, Section 9 of the Oregon Constitution.[1] *Acton v. Vernonia School Dist. 47J,* 23 F.3d 1514, 1516 (9th Cir.1994). In reversing our decision, the Supreme Court held that the searches in question did not violate the Fourth Amendment. *Vernonia School Dist. 47J v. Acton,* —— U.S. at ——, 115 S.Ct. at 2397. The Court also held that we erred in interpreting Article I, Section 9 of the Oregon Constitution *because* we based our conclusion on an erroneous interpretation of the Fourth Amendment. The Court declined, however, to reach the question of whether or not, apart from any constraints imposed by the Fourth Amendment, the drug tests in question would violate the Oregon Constitution. Justice Scalia, writing for the Court, explicitly left that issue open on remand:

The Ninth Circuit held that Vernonia's Policy not only violated the Fourth Amendment, but also, by reason of that violation, contravened Article I, ¶ 9 of the Oregon Constitution. Our conclusion that the former holding was in error means that the latter holding rested on a flawed premise. We therefore remand the case to

effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

the Court of Appeals for further proceedings consistent with this opinion. *Id.*

The Supreme Court's decision leaves us with three possible courses of action. First, we could conduct a serious analysis of the question of whether or not random, suspicionless drug tests violate Article I, Section 9 of the Oregon Constitution. Second, we could certify that question to the Oregon Supreme Court. Third, discouraged by the Court's rejection of our construction of the United States Constitution, we could throw up our hands and simply proclaim that random, suspicionless drug tests are consistent with the Oregon Constitution as well. The majority has chosen the least desirable of these alternatives.

In denying Acton's request to certify this question to the Oregon Supreme Court, the majority announces, "we are of the opinion that the Oregon Supreme Court would not offer greater protection under the provisions of the Oregon Constitution in this case" than the United States Supreme Court offered under the United States Constitution. That wholly unsupported and conclusory statement is in direct conflict with several assertions in our earlier opinion in this case, assertions that in no way rested on our Fourth Amendment analysis that the Supreme Court subsequently rejected. Rather our earlier assertions accurately reflected what Oregon courts have said about Oregon's Constitution, and the United States Supreme Court did not suggest otherwise.

For example, our opinion correctly states: "We can say with absolute confidence that the Oregon Constitution will not be construed to offer less protection than the Fourth Amendment. It is *highly likely* that it will be found to offer more protection." *Acton v. Vernonia School Dist. 47J*, 23 F.3d at 1518 (emphasis added). Our opinion also correctly states: "Oregon insists that its constitutional provision can give more protection than the federal constitution and that it sometimes does so." *Id.*, citing *State v. Caraher*, 293 Or. 741, 748–50, 653 P.2d 942, 946–47 (1982); *State v. Florance*, 270 Or. 169, 182–183, 527 P.2d 1202, 1208–09 (1974), *overruled on other grounds by Caraher*, 293 Or. at 748–750, 653 P.2d 942. The opinion even

gives an example of a case in which Oregon has found that its state constitution provides more protection than the Fourth Amendment. "For example, in *Nelson v. Lane County*, 304 Or. 97, 743 P.2d 692 (1987) (*Nelson II*) the court found, in effect, that a roadblock stop violated the Oregon Constitution due to a lack of proper authorization, despite the fact that it would not violate the Fourth Amendment." *Acton*, 23 F.3d at 1518 (citation omitted).

Nonetheless, the majority now concludes peremptorily that the Oregon Constitution provides no greater protection than the United States Constitution against random, suspicionless searches—this despite our repeated suggestions to the contrary in our earlier opinion. The majority cites no intervening Oregon case law to explain its swift and total capitulation on this issue, nor does it explain what, if any, reasoning underlies its conclusion.

It is beyond question that states can interpret their constitutions to provide more protection than does the United States Constitution. The majority assumes, without justification or explanation, that just because the federal courts have recently taken a less expansive view of the Fourth Amendment than in the past, Oregon will interpret its constitutional provision against arbitrary searches and seizures in a similarly narrow fashion. I see no reason to presume that Oregon courts will follow our recent federal practice of shrinking constitutional rights or to assume that Oregon's courts will not continue vigilantly to protect Oregonians' rights under the state constitution. In fact, the courts of Oregon, as our opinion in *Acton* expressly recognizes, "have gone out of their way to insist that federal constitutional analysis does not control Oregon search and seizure analysis." *Acton*, 23 F.3d at 1518 (citations omitted). Thus if we take Oregon courts at their word, there is no reason to believe that the Oregon Supreme Court would agree with the majority's newly adopted and excessively narrow view of the Oregon Constitution.

I would allow the Oregon Supreme Court to decide whether or not Article I, Section 9 of the state constitution bars random, suspi-

cionless searches. Doing so would not only show the proper respect due state courts under our federal system, it would also ensure that the correct answer would be reached.[2]

In conclusion, having more faith in the wisdom of the states than my colleagues demonstrate here, I would grant the motion to certify. I am not prepared to say that the Oregon Supreme Court will decide that the rights of its school children must be shaped by the national frenzy over the war-on-drugs. To the contrary, given its history of rugged individualism and its concern for constitutional rights, Oregon might well opt for a more generous and enlightened reading of its constitution. I respectfully dissent.

---

2. While the panel did interpret the Oregon Constitution in its original decision, doing so there served the interests of judicial economy since the Actons claimed that random, suspicionless searches violated both the Oregon and the U.S. Constitutions. Now that the only remaining issue involves the proper interpretation of Article I, Section 9 of the Oregon Constitution, I see no reason not to defer to the Oregon Supreme Court.